# EXHIBIT A

# MEDICARE MARKETING GUIDELINES FOR:

**Medicare Advantage Plans (MAs)**

**Medicare Advantage Prescription Drug Plans (MA-PDs)**

**Prescription Drug Plans (PDPs)**

**1876 Cost Plans**



CMS
CENTERS for MEDICARE & MEDICAID SERVICES

*Published: August 15, 2005*
*Revised: November 1, 2005*
*2nd Revision: July 25, 2006*

## Internet (A)

Organizations may market other lines of business concurrently with plan products on the Internet, though to avoid beneficiary confusion, organizations must continue to maintain a separate and distinct section of their Web sites for plan information only. CMS will review organization's Web pages to ensure that plans are maintaining the separation between Part D information and information on other lines of business.

## HIPAA Privacy Rule (A)

Generally, organizations are not required to obtain authorization from enrollees to use or disclose an enrollee's protected health information to make a communication about replacements of, or enhancements to, the plan of benefits of the organizations and the organizations own health-related, value-added products and services. These categories are exceptions to the definition of marketing in the HIPAA Privacy Rule. In compliance with these exceptions, organizations may use and disclose protected health information to make communications to enrollees about other lines of business provided by the covered entity.

However, an organization must obtain authorization from an enrollee, prior to using or disclosing the enrollee's protected health information for any marketing that does not fall within the exceptions to the definition of marketing under the HIPAA Privacy Rule. For example, authorization is needed if the product is a pass-through of a discount available to the public at large, an accident only policy, a life insurance policy, or an item or service that is not health-related.

## Non-Benefit/Service-Providing Third Party Marketing Materials (A)

A non-benefit/service-providing third party entity is an organization that neither administers the health care/prescription drug benefit nor provides health care services/Part D drugs to Medicare beneficiaries. For the purpose of marketing review, non-benefit/service providing third party entities are organizations or individuals that supply information to an organization's membership, which is paid for by the organization or the non-benefit/service-providing third part entity. An example of a non-benefit/service-providing third party could be a research firm that provides comparative data relating to Medicare Advantage /Part D plans.

CMS does not review marketing materials originated by non-benefit/service-providing third party entities.

Therefore, if a non-benefit/service-providing third party wishes to market to an organization's members, they must submit their materials to the organization, which in turn, may distribute the materials to their membership. It is the organization's responsibility to ensure that these marketing materials contain the disclaimer:

"Medicare has neither reviewed, nor endorses this information."

This disclaimer must be prominently displayed at the bottom center of the first page of the material and must be of the same font size and style as the commercial message.

## Marketing Material Requirements for Non-English Speaking Populations or Populations with Special Needs (A)

Organizations should make marketing materials available in any language that is the primary language of more than ten percent of a plan's geographic service area. Additionally, call centers must be able to accommodate non-English speaking/reading beneficiaries. Organizations should have appropriate individuals and translation services available to call center personnel to answer questions non-English speaking beneficiaries may have concerning aspects of the prescription drug benefit.

In addition, basic enrollee information should be made available to the visually impaired. Organizations must make sure information about their benefits is accessible and appropriate to persons eligible for Medicare because of disability.

Organizations must submit a signed letter of attestation and submit the foreign language version(s) (e.g., separate versions Spanish, Chinese, and Greek submitted in one submission) of the material via HPMS in a Zip-File, after the English-version of the piece has been approved to the appropriate CMS Regional Office.

### Review of Marketing Material in Non-English Language or Braille (A)

Organizations that submit marketing materials containing non-English or Braille information (in whole or in part) must submit an English version (translation) of the piece and a letter of attestation. The plan should submit an English version for approval first, and then submit the non-English or Braille version along with the letter of attestation. This way, any changes or revisions that are made to the English version will be accurately reflected in non-English materials when sent for review.

The letter of attestation must be signed and certified by an authorized official employed by the organization, and must attest that the translation conveys the same information and level of detail as the corresponding English version. See model attestation letter at the end of this section.

Organizations will be subject to verification monitoring review and penalties for violation of CMS policy. In addition to verifying the accuracy of non-English marketing materials through monitoring review, CMS will also periodically conduct marketing review of non-English materials on an "as needed" basis. If materials are found inaccurate or do not convey the same information as the English version, organizations may not distribute materials until revised materials have been approved. If multi-region organizations have submitted materials in English to CMS and the materials have been approved, the same materials in other languages or Braille may be used in other regions.

- Distribute health plan brochures and application forms, while at the Health Fair. They may also include in their handouts a reply card, which may be given to interested beneficiaries for return to the organization via mail;

- Have a booth at the Health Fair;

- Distribute items with a total retail value of no more than $15. These items MUST be offered to everyone, (e.g., organizations can not give gifts to only those individuals who show interest);

- Have any personnel present (i.e., marketing personnel, customer service personnel) as long as they adhere to these guidelines;

- Contribute funding for any Health Fair costs (i.e., purchasing of food; drawings, raffles, or door prizes for attendees which exceed the $15 nominal value requirement) as long as the recognition of the donation is to a number of entities (not just one particular plan); and

- Market multiple lines of business.

**Medicare Advantage / Part D plans may not do the following:**

- Conduct sales presentations;

- Collect enrollment applications. (Although application forms may be distributed, they may not be collected during Health Fairs);

- Collect names/addresses of potential enrollees. However, as noted above, they may distribute application forms and reply cards;

- Compare their benefits against other health plans. However, they may use comparative information, which has been created by CMS (such as information from CMS's Web site) or information/materials that have been approved by CMS (i.e., the standardized Summary of Benefits);

- Use materials provided by a third party, unless they have been approved by CMS in advance; and

- Provide individual gifts with a retail value of more than $15.00.

## Specific Guidance about Provider Promotional Activities (A)

As used in specific guidance about provider activities, the term "provider" refers to all providers contracted with the plan and their sub-contractors, including but not limited to: pharmacists, pharmacies, physicians, hospitals, and long-term care facilities. The plan sponsor shall ensure that any provider contracted with the plan (and its sub-contractors)

or agent (or its sub-contractors) performing functions on the plan sponsor's behalf related to the administration of the plan benefit, including all activities related to assisting in enrollment and education, agrees to the same restrictions and conditions that apply to the plan sponsor through its contract, and shall prohibit them from steering, or attempting to steer an undecided potential enrollee toward a plan, or limited number of plans, offered either by the plan sponsor or another plan sponsor, based on the financial interest of the provider or agent, (or their subcontractors). Providers that have entered into co-branding relationships with plan sponsors must also follow this guidance.

CMS is concerned with provider activities for the following reasons:

- Providers may not be fully aware of all plan benefits and costs; and

- Providers may confuse the beneficiary if the provider is perceived as acting as an agent of the plan vs. acting as the beneficiary's provider.

Providers may face conflicting incentives when acting as a plan representative. For example, some providers may gain financially from a beneficiary's selection of one plan over another plan. Additionally, providers generally know their patients' health status. The potential for financial gain by the provider steering a beneficiary's selection of a plan could result in recommendations that do not address all of the concerns or needs of a potential plan enrollee. These provider Marketing Guidelines are designed to guide plans and providers in assisting beneficiaries with plan selection, while at the same time striking a balance to ensure that provider assistance results in plan selection that is always in the best interests of the beneficiary.

Following are requirements associated with provider activities. The plan sponsor shall ensure that any provider contracted with the plan (and its subcontractors) complies with these requirements:

1. **Provider Activities and Materials in the Health Care Setting** – Beneficiaries often look to their health care professionals to provide them with complete information regarding their health care choices (e.g., providing objective information regarding specific plans, such as covered benefits, cost sharing, drugs on formularies, utilization management tools, *eligibility requirements for Special Needs Plans*). To the extent that a provider can assist a beneficiary in an objective assessment of the beneficiary's needs and potential plan options that may meet those needs, providers are encouraged to do so. To this end, providers may certainly engage in discussions with beneficiaries when patients seek information or advice from their provider regarding their Medicare options. Providers are permitted to make available and/or distribute plan marketing materials for all plans with which the provider participates (including PDP enrollment applications, but not MA or MA-PD enrollment applications) and display posters or other materials announcing plan contractual relationships. However, providers cannot accept enrollment applications or offer inducements to persuade beneficiaries to join plans. Providers also cannot direct, urge or attempt to

persuade beneficiaries to enroll in a specific plan. In addition, providers cannot offer anything of value to induce plan enrollees to select them as their provider.

Providers should also inform prospective enrollees where they may obtain information on the full range of plan options. Because providers are usually not fully aware of all Medicare plan benefits and costs, they are advised to additionally refer their patients to other sources of information, such as the State Health Insurance Assistance Programs, plan marketing representatives, their State Medicaid Office, local Social Security Administration Office, http://www.medicare.gov/, or 1-800-MEDICARE.

The "Medicare and You" Handbook **or** "Medicare Compare Information" (from http://www.medicare.gov), may be distributed by providers without additional approvals. There may be other documents that provide comparative and descriptive material about plans, of a broad nature, that are written by CMS or have been previously approved by CMS. These materials may be distributed by plans and providers without further CMS approval. ***This includes CMS Plan Finder information via a computer terminal for access by beneficiaries.*** Plans should advise contracted providers of the provisions of these rules.

2. **Plan Activities and Materials in the Health Care Setting** – While providers are prohibited from accepting enrollment applications in the health care setting, plans or plan agents may conduct sales presentations and distribute and accept enrollment applications in health care settings as long as the activity takes place in the common areas of the setting and patients are not misled or pressured into participating in such activities. Common areas, where marketing activities are allowed, include areas such as hospital or nursing home cafeterias, community or recreational rooms, and conference rooms. If a pharmacy counter is located within a retail store, common areas would include the space outside of where patients wait for services or interact with pharmacy providers and obtain medications.

Plans are prohibited from conducting sales presentations and distributing and accepting enrollment applications in areas where patients primarily intend to receive health care services. These restricted areas generally include, but are not limited to, waiting rooms, exam rooms, hospital patient rooms, and pharmacy counter areas (where patients wait for services or interact with pharmacy providers and obtain medications).

*NOTE: Upon request by the beneficiary, plans are permitted to schedule appointments with beneficiaries residing in long-term care facilities just as with other individuals.*

3. **Provider Affiliation Information** – Providers may announce new affiliations and repeat affiliation announcements for specific plans through general advertising (e.g., publicity, radio, television). An announcement to patients of a new affiliation which names only one plan may occur only once when such announcement is conveyed through direct mail and/or email. Additional direct mail and/or email

communications from providers to their patients regarding affiliations must include all plans with which the provider contracts. Provider affiliation banners, displays, brochures, and/or posters located on the premises of the provider must include all plans with which the provider contracts. Any affiliation communication materials that describe plans in any way (e.g., benefits, formularies) must be approved by CMS. Materials that indicate the provider has an affiliation with certain plans and only lists plan names and/or contact information do not require CMS approval.

4. **Comparative and Descriptive Plan Information** – Providers may distribute printed information provided by a plan sponsor to their patients comparing the benefits of different plans (all or a subset) with which they contract. Materials may not "rank order" or highlight specific plans and should include only objective information. Such materials must have the concurrence of all plans involved in the comparison and must be approved by CMS prior to distribution (i.e., these items are not be subject to File & Use Certification). The plans must determine a lead plan to coordinate submission of these materials. CMS continues to hold the plans responsible for any comparative/descriptive material developed and distributed on their behalf by their contracting providers. Providers may not health screen when distributing information to their patients, as health screening is a prohibited marketing activity.

**NOTE:** *Plans may not use providers to distribute printed information comparing the benefits of different plans unless providers accept and display materials from all plans in the service area and contract with the provider.*

5. **Comparative and Descriptive Plan Information Provided by a Non-Benefit/Service Providing Third-Party** – Providers may distribute printed information comparing the benefits of different plans (all or a subset) in a service area when the comparison is done by an objective third party. For more information on non-benefit/service providing third party providers (See section 10 under Marketing of Multiple Lines of Business, Non-Benefit/Service-Providing Third Party Marketing Materials)

6. **Providers/Provider Group Web Sites** – Providers may provide links to plan enrollment applications and/or provide downloadable enrollment applications. The site must provide the links/downloadable formats to enrollment applications for all plans with which the provider participates. As an alternative, providers may include a link to the CMS Online Enrollment Center.

7. **Health Fairs** – Providers may distribute plan marketing materials (including PDP enrollment applications, but not MA or MA-PD enrollment applications) and generally educate potential enrollees at health fairs. Providers cannot compare benefits among plans in this setting because they may not be fully aware of all benefits and costs of the various plans.

8. **Leads from Providers** – Plans and providers are responsible for following all Federal and State laws regarding confidentiality and disclosure of patient information to plan sponsors for marketing purposes. This obligation includes compliance with the provisions of the HIPAA privacy rule and its specific rules regarding uses and

disclosures of beneficiary information.  In addition, plans are subject to sanction for engaging in any practice that may reasonably be expected to have the effect of denying or discouraging enrollment of individuals whose medical condition or history indicates a need for substantial future medical services (i.e., health screening or "cherry picking").