Page 9 - State Survey Agency Directors

**The American Association of Nurse Assessment Coordinators (AANAC)**
  http://www.aanac.org

**The Alzheimer's Association**
  http://www.alz.org

**The Centers for Disease Control and Prevention (CDC)**
  http://www.cdc.gov

**U.S. Food and Drug Association (FDA)**
  http://www.fda.gov

**FDA– Food Safety Information**
  http://www.foodsafety.gov

**The American Diabetes Association**
  http://www.diabetes.org

**The American Dietetic Association**
  http://www.eatright.org

**The U.S. Department of Agriculture Food Safety and Inspection Service (FSIS)**
  http://www.fsis.usda.gov

**Disability Resources**
  http://www.disability.gov

**The Administration on Aging**
  http://www.aoa.gov

Page 10 - State Survey Agency Directors

Attachment C

**Social Security Act §1860D Part D – Voluntary Prescription Drug Benefit Program**

Subpart 1 – Part D Eligible Individuals and Prescription Drug Benefits

☐ SEC. 1860D-1. *[42 U.S.C. 1395w-101]*

*(a) PROVISION OF QUALIFIED PRESCRIPTION DRUG COVERAGE THROUGH ENROLLMENT IN PLANS.—*

(1) IN GENERAL.—Subject to the succeeding provisions of this part, each part D eligible individual (as defined in paragraph (3)(A)) is entitled to obtain qualified prescription drug coverage (described in section 1860D-2(a)) as follows:
(A) FEE-FOR-SERVICE ENROLLEES MAY RECEIVE COVERAGE THROUGH A PRESCRIPTION DRUG PLAN.—A part D eligible individual who is not enrolled in an MA plan may obtain qualified prescription drug coverage through enrollment in a prescription drug plan (as defined in section 1860D-41(a)(14)).
(B) MEDICARE ADVANTAGE ENROLLEES.—
(i) ENROLLEES IN A PLAN PROVIDING QUALIFIED PRESCRIPTION DRUG COVERAGE RECEIVE COVERAGE THROUGH THE PLAN.—A part D eligible individual who is enrolled in an MA-PD plan obtains such coverage through such plan.
(ii) LIMITATION ON ENROLLMENT OF MA PLAN ENROLLEES IN PRESCRIPTION DRUG PLANS.—Except as provided in clauses (iii) and (iv), a part D eligible individual who is enrolled in an MA plan may not enroll in a prescription drug plan under this part.
(iii) PRIVATE FEE-FOR-SERVICE ENROLLEES IN MA PLANS NOT PROVIDING QUALIFIED PRESCRIPTION DRUG COVERAGE PERMITTED TO ENROLL IN A PRESCRIPTION DRUG PLAN.—A part D eligible individual who is enrolled in an MA private fee-for-service plan (as defined in section 1859(b)(2)) that does not provide qualified prescription drug coverage may obtain qualified prescription drug coverage through enrollment in a prescription drug plan.
(iv) ENROLLEES IN MSA A PLANS PERMITTED TO ENROLL IN A PRESCRIPTION DRUG PLAN.—A part D eligible individual who is enrolled in an MSA plan (as defined in section 1859(b)(3)) may obtain qualified prescription drug coverage through enrollment in a prescription drug plan.
(2) COVERAGE FIRST EFFECTIVE JANUARY 1, 2006.—Coverage under prescription drug plans and MA-PD plans shall first be effective on January 1, 2006.
(3) DEFINITIONS.—For purposes of this part:
(A) PART D ELIGIBLE INDIVIDUAL.—The term "part D eligible individual" means an individual who is entitled to benefits under part A or enrolled under part B.
(B) MA PLAN.—The term "MA plan" has the meaning given such term in section 1859(b)(1).
(C) MA-PD PLAN.—The term "MA-PD plan" means an MA plan that provides qualified prescription drug coverage.

*(b) ENROLLMENT PROCESS FOR PRESCRIPTION DRUG PLANS.—*

(1) ESTABLISHMENT OF PROCESS.—

Page 11 - State Survey Agency Directors

(A) IN GENERAL.—The Secretary shall establish a process for the enrollment, disenrollment, termination, and change of enrollment of part D eligible individuals in prescription drug plans consistent with this subsection.
(B) APPLICATION OF MA RULES.—In establishing such process, the Secretary shall use rules similar to (and coordinated with) the rules for enrollment, disenrollment, termination, and change of enrollment with an MA-PD plan under the following provisions of section 1851:

(i)     RESIDENCE REQUIREMENTS.—Section 1851(b)(1)(A), relating to residence requirements.

[ SEC. 1851(b)(1)(A). RESIDENT REQUIREMENTS –SPECIAL RULES.
(1) RESIDENCE REQUIREMENT.— (A) IN GENERAL.—Except as the Secretary may otherwise provide and except as provided in subparagraph (C), an individual is eligible to elect a Medicare+Choice plan offered by a Medicare+Choice organization only if the plan serves the geographic area in which the individual resides.]

(ii)     EXERCISE OF CHOICE.—Section 1851(c) (other than paragraph (3)(A) of such section), relating to exercise of choice.

[SEC. 1851(c) PROCESS FOR EXERCISING CHOICE.— (1) IN GENERAL.— The Secretary shall establish a process through which elections described in subsection (a) are made and changed, including the form and manner in which such elections are made and changed. Such elections shall be made or changed only during coverage election periods specified under subsection (e) and shall become effective as provided in subsection (f). (2) COORDINATION THROUGH MEDICARE+CHOICE ORGANIZATIONS.— (A) ENROLLMENT.—Such process shall permit an individual who wishes to elect a Medicare+Choice plan offered by a Medicare+Choice organization to make such election through the filing of an appropriate election form with the organization. (B) DISENROLLMENT.—Such process shall permit an individual, who has elected a Medicare+Choice plan offered by a Medicare+Choice organization and who wishes to terminate such election, to terminate such election through the filing of an appropriate election form with the organization. (3) DEFAULT.— (A) INITIAL ELECTION.— (i) IN GENERAL.—Subject to clause (ii), an individual who fails to make an election during an initial election period under subsection (e)(1) is deemed to have chosen the original Medicare fee-for-service program option. (ii) SEAMLESS CONTINUATION OF COVERAGE.—The Secretary may establish procedures under which an individual who is enrolled in a health plan (other than Medicare+Choice plan) offered by a Medicare+Choice organization at the time of the initial election period and who fails to elect to receive coverage other than through the organization is deemed to have elected the Medicare+Choice plan offered by the organization (or, if the organization offers more than one such plan, such plan or plans as the Secretary identifies under such procedures). (B) CONTINUING PERIODS.—An individual who has made (or is deemed to have made) an election under this section is considered to have continued to make such election until such time as— (i) the individual changes the election under this section, or (ii) the Medicare+Choice plan with

> respect to which such election is in effect is discontinued or, subject to subsection (b)(1)(B), no longer serves the area in which the individual resides.]

(iii) COVERAGE ELECTION PERIODS.—Subject to paragraphs (2) and (3) of this subsection, section 1851(e) (other than subparagraphs (B) and (C) of paragraph (2) and the second sentence of paragraph (4) of such section), relating to coverage election periods, including initial periods, annual coordinated election periods, special election periods, and election periods for exceptional circumstances.

(iv) COVERAGE PERIODS.—Section 1851(f), relating to effectiveness of elections and changes of elections.

(v) GUARANTEED ISSUE AND RENEWAL.—Section 1851(g) (other than paragraph (2) of such section and clause (i) and the second sentence of clause (ii) of paragraph (3)(C) of such section), relating to guaranteed issue and renewal.

(vi) MARKETING MATERIAL AND APPLICATION FORMS.—Section 1851(h), relating to approval of marketing material and application forms. In applying clauses (ii), (iv), and (v) of this subparagraph, any reference to section 1851(e) shall be treated as a reference to such section as applied pursuant to clause (iii) of this subparagraph.

(C) SPECIAL RULE.—The process established under subparagraph (A) shall include, in the case of a part D eligible individual who is a full-benefit dual eligible individual (as defined in section 1935(c)(6)) who has failed to enroll in a prescription drug plan or an MA-PD plan, for the enrollment in a prescription drug plan that has a monthly beneficiary premium that does not exceed the premium assistance available under section 1860D-14(a)(1)(A)). If there is more than one such plan available, the Secretary shall enroll such an individual on a random basis among all such plans in the PDP region. Nothing in the previous sentence shall prevent such an individual from declining or changing such enrollment.

(2) INITIAL ENROLLMENT PERIOD.—
(A) PROGRAM INITIATION.—In the case of an individual who is a part D eligible individual as of November 15, 2005, there shall be an initial enrollment period that shall be the same as the annual, coordinated open election period described in section 1851(e)(3)(B)(iii), as applied under paragraph (1)(B)(iii).
(B) CONTINUING PERIODS.—In the case of an individual who becomes a part D eligible individual after November 15, 2005, there shall be an initial enrollment period which is the period under section 1851(e)(1), as applied under paragraph (1)(B)(iii) of this section, as if "entitled to benefits under part A or enrolled under part B" were substituted for "entitled to benefits under part A and enrolled under part B", but in no case shall such period end before the period described in subparagraph (A).
(3) ADDITIONAL SPECIAL ENROLLMENT PERIODS.—The Secretary shall establish special enrollment periods, including the following:
(A) INVOLUNTARY LOSS OF CREDITABLE PRESCRIPTION DRUG COVERAGE.—
(i) IN GENERAL.—In the case of a part D eligible individual who involuntarily loses creditable prescription drug coverage (as defined in section 1860D-13(b)(4)).
(ii) NOTICE.—In establishing special enrollment periods under clause (i), the Secretary shall take into account when the part D eligible individuals are provided notice of the loss of creditable prescription drug coverage.

(iii) FAILURE TO PAY PREMIUM.—For purposes of clause (i), a loss of coverage shall be treated as voluntary if the coverage is terminated because of failure to pay a required beneficiary premium.
(iv) REDUCTION IN COVERAGE.—For purposes of clause (i), a reduction in coverage so that the coverage no longer meets the requirements under section 1860D-13(b)(5) (relating to actuarial equivalence) shall be treated as an involuntary loss of coverage.
(B) ERRORS IN ENROLLMENT.—In the case described in section 1837(h) (relating to errors in enrollment), in the same manner as such section applies to part B.
(C) EXCEPTIONAL CIRCUMSTANCES.—In the case of part D eligible individuals who meet such exceptional conditions (in addition to those conditions applied under paragraph (1)(B)(iii)) as the Secretary may provide.
(D) MEDICAID COVERAGE.—In the case of an individual (as determined by the Secretary) who is a full-benefit dual eligible individual (as defined in section 1935(c)(6)).
(E) DISCONTINUANCE OF MA-PD ELECTION DURING FIRST YEAR OF ELIGIBILITY.—In the case of a part D eligible individual who discontinues enrollment in an MA-PD plan under the second sentence of section 1851(e)(4) at the time of the election of coverage under such sentence under the original Medicare fee-for-service program.

(4) INFORMATION TO FACILITATE ENROLLMENT.—
(A) IN GENERAL.—Notwithstanding any other provision of law but subject to subparagraph (B), the Secretary may provide to each PDP sponsor and MA organization such identifying information about part D eligible individuals as the Secretary determines to be necessary to facilitate efficient marketing of prescription drug plans and MA-PD plans to such individuals and enrollment of such individuals in such plans.
(B) LIMITATION.—
(i) PROVISION OF INFORMATION.—The Secretary may provide the information under subparagraph (A) only to the extent necessary to carry out such subparagraph.
(ii) USE OF INFORMATION.—Such information provided by the Secretary to a PDP sponsor or an MA organization may be used by such sponsor or organization only to facilitate marketing of, and enrollment of part D eligible individuals in, prescription drug plans and MA-PD plans.

(5) REFERENCE TO ENROLLMENT PROCEDURES FOR MA-PD PLANS.— For rules applicable to enrollment, dis-enrollment, termination, and change of enrollment of part D eligible individuals in MA-PD plans, see section 1851.

(6) REFERENCE TO PENALTIES FOR LATE ENROLLMENT.—Section 1860D-13(b) imposes a late enrollment penalty for part D eligible individuals who—
(A) enroll in a prescription drug plan or an MA-PD plan after the initial enrollment period described in paragraph (2); and
(B) fail to maintain continuous creditable prescription drug coverage during the period of non-enrollment.

(c) PROVIDING INFORMATION TO BENEFICIARIES.—

(1) ACTIVITIES.—The Secretary shall conduct activities that are designed to broadly disseminate information to part D eligible individuals (and prospective part D eligible individuals) regarding the coverage provided under this part. Such activities shall ensure

Page 14 - State Survey Agency Directors

that such information is first made available at least 30 days prior to the initial enrollment period described in subsection (b)(2)(A).

(2) REQUIREMENTS.—The activities described in paragraph (1) shall—
(A) be similar to the activities performed by the Secretary under section 1851(d), including dissemination (including through the toll-free telephone number 1-800-MEDICARE) of comparative information for prescription drug plans and MA-PD plans; and
(B) be coordinated with the activities performed by the Secretary under such section and under section 1804.

(3) COMPARATIVE INFORMATION.—
(A) IN GENERAL.—Subject to subparagraph (B), the comparative information referred to in paragraph (2)(A) shall include a comparison of the following with respect to qualified prescription drug coverage:
(i) BENEFITS.—The benefits provided under the plan.
(ii) MONTHLY BENEFICIARY PREMIUM.—The monthly beneficiary premium under the plan.
(iii) QUALITY AND PERFORMANCE.—The quality and performance under the plan.
(iv) BENEFICIARY COST-SHARING.—The cost-sharing required of part D eligible individuals under the plan.
(v) CONSUMER SATISFACTION SURVEYS.—The results of consumer satisfaction surveys regarding the plan conducted pursuant to section 1860D-4(d).
(B) EXCEPTION FOR UNAVAILABILITY OF INFORMATION.—The Secretary is not required to provide comparative information under clauses (iii) and (v) of subparagraph (A) with respect to a plan—
(i) for the first plan year in which it is offered; and
(ii) for the next plan year if it is impracticable or the information is otherwise unavailable.

(4) INFORMATION ON LATE ENROLLMENT PENALTY.—The information disseminated under paragraph (1) shall include information concerning the methodology for determining the late enrollment penalty under section 1860D-13(b).

☐ SEC. 1860D-3. [42 U.S.C. 1395w-103]

(a) ASSURING ACCESS TO A CHOICE OF COVERAGE.—

(1) CHOICE OF AT LEAST TWO PLANS IN EACH AREA.—The Secretary shall ensure that each part D eligible individual has available, consistent with paragraph (2), a choice of enrollment in at least 2 qualifying plans (as defined in paragraph (3)) in the area in which the individual resides, at least one of which is a prescription drug plan. In any such case in which such plans are not available, the part D eligible individual shall be given the opportunity to enroll in a fallback prescription drug plan.

(2) REQUIREMENT FOR DIFFERENT PLAN SPONSORS.—The requirement in paragraph (1) is not satisfied with respect to an area if only one entity offers all the qualifying plans in the area.

Page 15 - State Survey Agency Directors

(3) QUALIFYING PLAN DEFINED.—For purposes of this section, the term "qualifying plan" means—
(A) a prescription drug plan; or
(B) an MA-PD plan described in section 1851(a)(2)(A)(i) that provides—
(i) basic prescription drug coverage; or
(ii) qualified prescription drug coverage that provides supplemental prescription drug coverage so long as there is no MA monthly supplemental beneficiary premium applied under the plan, due to the application of a credit against such premium of a rebate under section 1854(b)(1)(C).

(b) FLEXIBILITY IN RISK ASSUMED AND APPLICATION OF FALLBACK PLAN.—In order to ensure access pursuant to subsection (a) in an area—

(1) The Secretary may approve limited risk plans under section 1860D-11(f) for the area; and

(2) only if such access is still not provided in the area after applying paragraph (1), the Secretary shall provide for the offering of a fallback prescription drug plan for that area under section 1860D-11(g).

**Social Security Act §1802 - Free Choice by Patient Guaranteed**

    SEC. 1802. *[42 U.S.C. 1395a]*

(a) BASIC FREEDOM OF CHOICE.—

Any individual entitled to insurance benefits under this title may obtain health services from any institution, agency, or person qualified to participate under this title if such institution, agency, or person undertakes to provide him such services.

(b) USE OF PRIVATE CONTRACTS BY MEDICARE BENEFICIARIES.—

(1) IN GENERAL.—Subject to the provisions of this subsection, nothing in this title shall prohibit a physician or practitioner from entering into a private contract with a Medicare beneficiary for any item or service—
(A) for which no claim for payment is to be submitted under this title, and
(B) for which the physician or practitioner receives—
(i) no reimbursement under this title directly or on a capitated basis, and
(ii) receives no amount for such item or service from an organization which receives reimbursement for such item or service under this title directly or on a capitated basis.

(2) BENEFICIARY PROTECTIONS.—
(A) IN GENERAL.—Paragraph (1) shall not apply to any contract unless—
(i) the contract is in writing and is signed by the Medicare beneficiary before any item or service is provided pursuant to the contract;
(ii) the contract contains the items described in subparagraph (B); and
(iii) the contract is not entered into at a time when the Medicare beneficiary is facing an emergency or urgent health care situation.

(B) ITEMS REQUIRED TO BE INCLUDED IN CONTRACT.—Any contract to provide items and services to which paragraph
(1) applies shall clearly indicate to the Medicare beneficiary that by signing such contract the beneficiary—
(i) agrees not to submit a claim (or to request that the physician or practitioner submit a claim) under this title for such items or services even if such items or services are otherwise covered by this title;
(ii) agrees to be responsible, whether through insurance or otherwise, for payment of such items or services and understands that no reimbursement will be provided under this title for such items or services;
(iii) acknowledges that no limits under this title (including the limits under section 1848(g)) apply to amounts that may be charged for such items or services;
(iv) acknowledges that Medigap plans under section 1882 do not, and other supplemental insurance plans may elect not to, make payments for such items and services because payment is not made under this title; and
(v) acknowledges that the Medicare beneficiary has the right to have such items or services provided by other physicians or practitioners for whom payment would be made under this title.
Such contract shall also clearly indicate whether the physician or practitioner is excluded from participation under the Medicare program under section 1128.

(3) PHYSICIAN OR PRACTITIONER REQUIREMENTS.—
(A) IN GENERAL.—Paragraph (1) shall not apply to any contract entered into by a physician or practitioner unless an affidavit described in subparagraph (B) is in effect during the period any item or service is to be provided pursuant to the contract.
(B) AFFIDAVIT.—An affidavit is described in this subparagraph if—
(i) the affidavit identifies the physician or practitioner and is in writing and is signed by the physician or practitioner;
(ii) the affidavit provides that the physician or practitioner will not submit any claim under this title for any item or service provided to any Medicare beneficiary (and will not receive any reimbursement or amount described in paragraph (1)(B) for any such item or service) during the 2-year period beginning on the date the affidavit is signed; and
(iii) a copy of the affidavit is filed with the Secretary no later than 10 days after the first contract to which such affidavit applies is entered into.
(C) ENFORCEMENT.—If a physician or practitioner signing an affidavit under subparagraph (B) knowingly and willfully submits a claim under this title for any item or service provided during the 2-year period described in subparagraph (B)(ii) (or receives any reimbursement or amount described in paragraph (1)(B) for any such item or service) with respect to such affidavit—
(i) this subsection shall not apply with respect to any items and services provided by the physician or practitioner pursuant to any contract on and after the date of such submission and before the end of such period; and
(ii) no payment shall be made under this title for any item or service furnished by the physician or practitioner during the period described in clause (i) (and no reimbursement or payment of any amount described in paragraph (1)(B) shall be made for any such item or service).

(4) LIMITATION ON ACTUAL CHARGE AND CLAIM SUBMISSION REQUIREMENT NOT APPLICABLE.—Section 1848(g) shall not apply with respect to

any item or service provided to a Medicare beneficiary under a contract described in paragraph (1).

(5) DEFINITIONS.—In this subsection:
(A) MEDICARE BENEFICIARY.—The term "Medicare beneficiary" means an individual who is entitled to benefits under part A or enrolled under part B.
(B) PHYSICIAN.—The term "physician" has the meaning given such term by paragraphs (1), (2), (3), and (4) of section 1861(r)[3].
(C) PRACTITIONER.—The term "practitioner" has the meaning given such term by section 1842(b)(18)(C).

**Social Security Act §1902 - State Plans for Medical Assistance**

(a) A STATE PLAN FOR MEDICAL ASSISTANCE MUST –

(23) provide that (A) any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services, and (B) an enrollment of an individual eligible for medical assistance in a primary care case-management system (described in section 1915(b)(1)), a Medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services under section 1905(a)(4)(C), except as provided in subsection (g), in section 1915, and in section 1932(a), except that this paragraph shall not apply in the case of Puerto Rico, the Virgin Islands, and Guam, and except that nothing in this paragraph shall be construed as requiring a State to provide medical assistance for such services furnished by a person or entity convicted of a felony under Federal or State law for an offense which the State agency determines is inconsistent with the best interests of beneficiaries under the State plan.

**CFR §483.60 Pharmacy Services**

The nursing home must provide routine and emergency drugs and biologicals to its residents, or obtain them under an agreement described in §483.75(h) of this part. The nursing home may permit unlicensed personnel to administer drugs if State law permits, but only under the general supervision of a licensed nurse.

> *Interpretive Guidelines §483.60*
> - The nursing home is responsible under §483.75(h) for the "timeliness of the services."
> - A drug, whether prescribed on a routine, emergency, or as needed basis, must be provided in a timely manner.
> - If failure to provide a prescribed drug in a timely manner causes the resident discomfort or endangers his or her health and safety, then this requirement is not met.

Page 18 - State Survey Agency Directors

- *Procedures §483.60*
  - ☐ During the surveyor's observation of the drug pass, are all ordered medications available?

- *Procedures §483.60(a)*
  - ☐ A nursing home must provide pharmaceutical services (including procedures that assure the accurate acquiring, receiving, dispensing, and administering of all drugs and biologicals) to meet the needs of each resident.