# VANCREST
HEALTH CARE CENTERS

**Convoy Care Center**
127 Mentzer Drive
Convoy, Ohio 45832
Phone: 419-749-2194
Fax: 419-749-2424

# Fax

**To:** Kevin Madagan        **From:** Jessie England

**Fax:**                     **Pages:**

**Phone:**                   **Date:**

**Re:**                      **CC:**

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

• **Comments:**

Confidentiality Notice: Confidential Health Information Enclosed

Protected Health Information (PHI) is personal and sensitive information related to a person's health care. It is being faxed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Re-disclosure without additional patient consent or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain confidentiality could subject you to penalties described in federal and state law.

IMPORTANT WARNING: This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law.

If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any disclosure, copying or distribution of this information is Strictly Prohibited. If you have received this message by error, please notify the sender immediately to arrange for return or destruction of these documents.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON LEGAL FOUNDATION,<br>2009 Massachusetts Ave., NW<br>Washington, DC 20016,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL O. LEAVITT, in his official capacity as Secretary, U.S. Department of Health and Human Services,<br>200 Independence Ave., S.W.<br>Washington, DC 20201<br><br>and<br><br>LESLIE V. NORWALK, in her official capacity as Acting Administrator, Centers for Medicaid and Medicare Services,<br>7500 Security Blvd.<br>Baltimore, MD 21244,<br><br>    Defendants. | Case No. 1:06CV01490 (RMC) |

## DECLARATION OF JESSIE ENGLAND

I, Jessie England, do hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

1. My name is Jessie England. I am a resident of Ohio, over eighteen (18) years of age, and I am of sufficient competence to make this declaration. I make this declaration upon my personal knowledge and in support of the Plaintiffs' Motion for Preliminarily Injunction.

2. I have been a registered nurse for fifteen (15) years, became a licensed

nursing home administrator in April 2006, and am currently employed as the Director of Nursing and Administrator of Convoy Care Center ("Convoy Care").

3. Convoy Care is a northwest Ohio skilled nursing facility providing services for up to fifty (50) residents, many of whom are enrolled in the Medicare Part D Prescription Benefit program. Some of these residents are also dual-eligibles, meaning they are Medicaid beneficiaries.

4. I find that comparing and analyzing the varying formularies and cost-sharing obligations of numerous Medicare Part D plans, and then applying such information to the prescription drug needs and financial ability of a given patient, is a very complex process which confuses a significant number of Convoy Care residents and their responsible parties (typically family members).

5. I am frustrated with the restrictions that the Part D marketing guidelines place on my ability to help Convoy Care residents select Medicare Part D plans that will cover drugs that are best suited to their needs.

6. I do not think that a majority of beneficiaries or their representatives can obtain appropriate information about Medicare Part D plans and their differences without some assistance.

7. For example, residents frequently approach me with an assortment of plan information requesting guidance about various Medicare Part D plans and the extent to which a plan suits their needs. Because of the marketing guidelines, all I can do to help my residents is sit at my computer, look up each plan, and display the drugs covered and drug costs. I am not able to offer my residents any other

assistance.

8. Whether going to the website, dealing with co-pays, or other numerous convoluted issues involved with Medicare Part D, patients and families are frustrated and need someone to help them make smart, patient appropriate decisions regarding the beneficiary.

9. Despite the goal of the marketing guidelines to combat fraud and other unethical behavior, ironically, I feel as though I am being unethical every time the marketing guidelines force me to silently comply and help a resident process an arbitrary decision to choose a plan that is clearly not appropriate for him or her. I am pained every time I am forced to acquiesce and facilitate such poor decision making.

10. My residents desperately need assistance in making sense of Medicare Part D plans. One of my residents is a retired teacher with a health insurance drug plan through a local teacher's association (the "Plan"). His wife, who is also the responsible party, is covered under the Plan. The Plan, however, would terminate her coverage if my resident were to enroll in a Medicare Part D plan. Sadly, because my resident was inadvertently enrolled during the Medicare Part D auto enrollment process, the Plan has repeatedly threatened to terminate my resident's wife's health insurance. The wife has been forced to cancel the auto enrollment of my resident five times and is now understandably stressed and troubled. She is very confused and worried that enrolling my resident in a Medicare Part D plan would be a poor choice because, not only would she lose her insurance, but my

resident would not have the same formulary and may be in a worse position. Without the marketing guideline restrictions, I would be able to calm the wife and explain that things are not as bad as they seem. I could explain that she does have options and I could further explain those options in detail and address all additional consequences and concerns that she may have at the time.

11. Dual-eligibles are most in need of consultation services because the drug regiments of residents change frequently. I am well positioned to handle this consultation because, as the Director of Nursing and Administration, I am: (i) acquainted with the drugs and formularies, (ii) understand the Medicare reimbursement system, and (iii) most importantly, am familiar with the particularities of each patient.

12. I firmly believe that if skilled nursing homes and other providers could give seniors advice about Medicare Part D, many Part D beneficiaries would be in plans that work much better for them.

Under penalty of perjury, I state that I have read the foregoing declaration consisting of twelve (12) numbered paragraphs, and the statements herein are true and correct to the best of my knowledge, information and belief.

*[Signature]*
Jessie England