UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WASHINGTON LEGAL FOUNDATION,**<br>2009 Massachusetts Ave., NW<br>Washington, DC 20016,<br><br>  Plaintiff,<br><br>  v.<br><br>**MICHAEL O. LEAVITT,** in his official<br>capacity as Secretary, U.S. Department<br>of Health and Human Services,<br>  200 Independence Ave., S.W.<br>  Washington, DC 20201<br><br>  and<br><br>**LESLIE V. NORWALK,** in her official<br>capacity as Acting Administrator, Centers<br>for Medicaid and Medicare Services,<br>  7500 Security Blvd.<br>  Baltimore, MD 21244,<br><br>  Defendants. | Case No. 1:06CV01490 (RMC) |

## DECLARATION OF MARGIE WHITE

I, Margie White, do hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

1. My name is Margie White. I am a resident of Ohio, over eighteen (18) years of age, and I am of sufficient competence to make this declaration. I make this declaration upon my personal knowledge and in support of the Plaintiffs' Motion for Preliminarily Injunction.

2. I have been a Registered Health Information Administrator ("RHIA") for a number of years and am currently employed as Assistant Administrator for Columbus Colony Elderly Care ("CCEC"), a non-profit nursing home and independent living housing facility near Columbus, Ohio. I have worked at CCEC for over six years.

3. CCEC is a 150-bed nursing home facility which provides both skilled and intermediate care for the elderly.

4. In addition to the typical challenges facing nursing-home residents with regard to decreased capacity, dementia, chronic illness and disease, CCEC is a nursing facility that primarily caters to the Deaf, Deaf and Blind, and hard of hearing.

5. Specifically, seventy percent (70%) of CCEC residents are deaf and twenty-five (25) of those residents are both deaf and blind. These challenges impede communication of all types. Many residents can not read, and all are computer illiterate.

6. Many of these residents are enrolled in the Medicare Part D Prescription Benefit Program, and are also dual-eligibles, meaning they are also Medicaid beneficiaries.

7. When residents are referred and admitted to CCEC, they are confronted with an overwhelming amount of information. They are generally uninformed when it comes to Medicare, and do not fully understand the Medicaid

- 3 -

program. To add to the confusion, the Medicare Part D formularies and plans are voluminous and complex and would be completely overwhelming for typical seniors. Because CCEC residents have special needs, these challenges are even further compounded. They need, want, and ask for guidance from their caregivers. Because of the Medicare Part D marketing guidelines, however, I am unable to provide any advice about what plans would be best for their situation.

8. When asked, I am only allowed to refer residents and patients to other sources of information. Sometimes I speak from my personal experience of having a grandmother who resides in a nursing home, and discuss her circumstances with residents who need guidance as an example. I cannot explain any more, or provide any further information, about what Part D plans may be best for the patient or resident who needs help.

9. In my opinion, the sources of information on the Medicare Part D plans that are available to our residents are not helpful at all. No matter how simplistically they are designed, because most of our residents have special needs beyond those of typical nursing-home residents, they are not able to understand the complex material presented.

10. In particular, the medicare.gov website is of no use to our residents. Most have never used a computer before at all, and certainly none have ever had to consult or rely on the internet for information affecting their health.

11. If I were able to, I would sit down with residents and go over the various options that are available. I would help them determine which of the many plan options is best for their situation in an attempt to guide them in making a decision.

12. Our residents need and ask for our assistance with regard to many other decisions they must make upon admission to the facility, including serious matters such as advanced directives and other important personal decisions. They want advice from caregivers whom they trust. Their caregivers are also in the best position to give advice based on personal familiarity with their individual circumstances.

13. CCEC is also different from other nursing home facilities, in that many of our residents come from other states across the country. In these circumstances, family members, who might otherwise have the requisite familiarity with their relatives' prescription drug needs to assist them in choosing a Part D formulary, are separated by distance and not able to assist their relatives with making such decisions.

14. From my perspective, the Part D marketing restrictions block our residents from getting basic help and advice they need in this area, which is confusing and upsetting for them as they often have no other viable sources of help and are used to being able to turn to their caregivers.

Under penalty of perjury, I state that I have read the foregoing declaration consisting of fourteen (14) numbered paragraphs, and the statements herein are true and correct to the best of my knowledge, information and belief.

_____
Margie White