UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WASHINGTON LEGAL FOUNDATION, )
    2009 Massachusetts Ave., NW )
    Washington, DC 20016, )
                                                       )
            Plaintiff, )
                                                       )
         v. )                Case No. 1:06CV01490 (RMC)
                                                       )
MICHAEL O. LEAVITT, in his official )
    capacity as Secretary, U.S. Department )
    of Health and Human Services, )
    200 Independence Ave., S.W. )
    Washington, DC 20201 )
                                                       )
         and )
                                                        )
LESLIE V. NORWALK, in her official )
    capacity as Acting Administrator, Centers )
    for Medicaid and Medicare Services, )
    7500 Security Blvd. )
    Baltimore, MD 21244, )
                                                       )
            Defendants. )
                                                       )

## DECLARATION OF BILL DONATELLI

    I, William J. Donatelli, do hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

    1.    My name is William J. Donatelli. I am a resident of Massachusetts, over eighteen (18) years of age, and I am of sufficient competence to make this declaration. I make this declaration upon my personal knowledge and in support of the Plaintiffs' Motion for Preliminarily Injunction.

    2.    I have been a pharmacist for 28 years and am currently employed as

an Omnicare Pharmacy Services Key Account Manager for the state of Massachusetts for Harborside Healthcare ("Harborside"), a company offering skilled nursing facility, long-term care, and rehabilitation services to seniors in 10 states: Mattachusetts, New Hampshire, Rhode Island, New Jersey, Maryland, Florida, Connecticut, Ohio, Indiana, and Kentucky.

3. Harborside provides services to over 8,000 residents, many of whom are enrolled in the Medicare Part D Prescription Benefit program. Many of these residents are also dual-eligibles, meaning they are Medicaid beneficiaries as well.

4. I find that comparing and analyzing the varying formularies and cost-sharing obligations of numerous Part D plans, and then applying such information to the prescription drug needs and financial ability of a given patient, is a very complex process which confuses a significant number of patients and their responsible parties (typically family members) at Harborside.

5. I know that pharmacists are bothered by the complicated formulary information and the constant changes in Part D plan formularies. Furthermore, pharmacists are frustrated with the restrictions that the Part D marketing guidelines place on their ability to help the patient select Part D plans that will cover drugs that are best for him or her.

6. As the primary person dealing with pharmacy issues at Harborside, I receive a lot of complaints regarding what appears to be poor pharmacy services, but is in actuality, a product of the marketing restrictions. The marketing restrictions significantly limit the amount of information a physician can provide to

patients regarding Part D plans and what may be best for the patient or resident who desperately needs help. Seniors are in more need of appropriate assistance in learning about Part D plans and the drugs they currently cover then ever before because the Part D plan formularies change so often.

7.  Although I know that Medicare intended to ensure that seniors got the prescription drugs they needed, the system for seniors to get Part D information is terrible. I do not think that a majority of beneficiaries can obtain appropriate information about Part D plans and their differences without some assistance. The average nursing home resident is an 86 year old female, with five to six comorbidities, and averages between ten to fifteen medications at any given time. These individuals are in no position to sift through the convoluted, complex, myriad drug plans over the internet. Medicare provides that the beneficiary's responsible party can provide assistance, but the responsible party is generally an individual in their mid-sixties who in all likelihood has difficulty themselves understanding the convoluted plans and the internet. If the nursing homes, pharmacists, and doctors could give seniors appropriate advice about Medicare Part D, many Part D beneficiaries would be able to enroll in plans that work much better for them.

8.  After attending a series of family events hosted by Harborside, I know firsthand that many patients and their families are totally overwhelmed with the enrollment process. Whether going to the website, dealing with co-pays, or the other numerous convoluted issues involved with Medicare Part D, patients and families are frustrated and need someone to help them make smart, patient

appropriate decisions.

9. Dual-eligibles are most in need of consultation services because the drug regiments of nursing home patients change frequently and a pharmacist is in the best position to handle the constant change in drug plans and patient needs.

10. I believe that the pharmacist is in the best position to assist patients and families because pharmacists are: (i) acquainted with the drugs and formularies, (ii) understand the Medicare reimbursement system, and (iii) most importantly, know the particularities of each patient. Permitting pharmacists to provide consultation services to patients and families would alleviate many of the current frustrations with Part D plans and the marketing guidelines.

Under penalty of perjury, I state that I have read the foregoing declaration consisting of ten (10) numbered paragraphs, and the statements herein are true and correct to the best of my knowledge, information and belief.

William J. Donatelli, BS, RPh, FASCP