## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| )<br>**WASHINGTON LEGAL FOUNDATION,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**MICHAEL O. LEAVITT, et al.,** )<br>)<br>**Defendants.** )<br>) | **Civil Action No. 06-1490 (RMC)** |

### MEMORANDUM OPINION

Washington Legal Foundation ("WLF") brought this suit against the U.S. Department of Health and Human Services and its component, Centers for Medicare and Medicare Services[1] (collectively "CMS"). The Complaint presents a First Amendment challenge to CMS guidelines regulating private entity marketing of Medicare Part D, the Medicare Prescription Drug Benefit. WLF has filed a motion for a preliminary injunction. CMS has opposed, primarily on the ground that it is not likely that WLF can demonstrate standing to bring this suit.[2] The Court agrees with CMS.

---

[1] The Complaint names as defendants Michael O. Leavitt, in his official capacity as Secretary of the Department of Health and Human Services, and Mark B. McClellan, M.D., in his official capacity as Administrator of the Centers for Medicare and Medicaid Services. Leslie V. Norwalk, in her official capacity as Acting Administrator of the Centers for Medicare and Medicaid Services, is substituted for her predecessor, Dr. McClellan, pursuant to Fed. R. Civ. P. 25(d)(1).

[2] CMS has not moved for summary judgment on the issue of standing because discovery is not complete. Defs.' Opp'n at 4 n.1. Note that, as plaintiff, WLF bears the burden of establishing that the court has subject matter jurisdiction. *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).

It is not likely that WLF will establish standing, and thus the request for a preliminary injunction will be denied.

## I. BACKGROUND

Medicare Part D is a managed care program that uses private health care organizations to sponsor prescription drug benefit plans. Defs.' Opp'n at 1. Medicare beneficiaries choose from a number of plans with different coverage and prices. *Id*. Part D plans contract with health care providers, usually pharmacists, to deliver prescription drugs. *Id*. According to CMS, such health care providers may have an incentive to steer a beneficiary toward a particular plan when it would financially benefit the providers. *Id*. at 1-2. To protect Medicare beneficiaries from this potential conflict of interest, CMS has instituted marketing guidelines. *Id*. at 2. The guidelines prohibit plans from using their providers to steer an undecided enrollee toward a plan for which the provider expects compensation directly or indirectly. *Id*. Ex. G at 8. WLF contends that by imposing limitations on the information that health care providers may communicate to Medicare beneficiaries, CMS violates the First Amendment rights of Medicare beneficiaries to receive truthful information regarding insurance coverage. Pl.'s Mem. at 1. Further, WLF claims that the marketing guideline restrictions "make it virtually impossible for providers to give meaningful information and advice to their patients, including WLF's members and supporters, regarding which Part D plan best suits their needs." *Id*. at 12. WLF seeks injunctive and declaratory relief. *Id*. at 5. CMS counters by asserting that the marketing guidelines are narrowly tailored to promote the significant government interest of protecting Medicare beneficiaries from provider conflicts of interest. Defs.' Opp'n at 2.

WLF brought this suit on behalf of its alleged members, Rebecca Fox, Mary Samp, and Edward Samp. Because the suit seeks only injunctive and declaratory relief, WLF contends that

the suit does not require the participation of WLF's individual members and WLF can prosecute the

suit in its own name on behalf of three of its members.  CMS contends that WLF lacks standing to

bring this suit.

## II.  LEGAL STANDARD

A court must consider four factors in deciding whether to issue a preliminary

injunction:

1.    whether the movant has shown a substantial likelihood of success on the merits;

2.    whether the movant would suffer irreparable injury if the injunction is not granted;

3.    whether the issuance of a preliminary injunction would cause substantial harm to other interested parties; and

4.    whether the public interest would be served by the issuance of an injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).  A preliminary injunction is

"an extraordinary remedy that should be granted only when the party seeking the relief, by a clear

showing, carries the burden of persuasion."  *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

## III.  ANALYSIS

### A.  Standing Generally

As a matter of basic constitutional law, federal courts are limited to deciding cases

and controversies, and the issue of standing is one feature of such limitation.  *Am. Legal Found. v.*

*FCC*, 808 F.2d 84, 88 (D.C. Cir. 1987) (citing *Valley Forge Christian College v. Americans United*

*for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)).  A plaintiff's standing under

Article III of the United States Constitution must be determined first in order to establish the

jurisdiction of the Court to hear the case and reach the merits.  *Steel Co. v. Citizens for a Better*

*Env't*, 523 U.S. 83, 101 (1998); *Grand Council of the Crees v. FERC*, 198 F.3d 950, 954 (D.C. Cir.

2000).   "Standing focuses on the complaining party to determine 'whether the litigant is entitled to

have the court decide the merits of the dispute or of particular issues.'" *Am. Legal Found.*, 808 F.2d

at 88 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  "[T]he decision to seek review must be

placed in the hands of those who have a direct stake in the outcome, not in the hands of concerned

bystanders, who will use it simply as a vehicle for the vindication of value interests."  *Id.* at 91

(internal quotation marks omitted) (quoting *Diamond v. Charles*, 476 U.S. 54, 61 (1986)).  "The

focus is on the qualifications and status of the party seeking to bring his complaint before a federal

court and not on the issues he wishes to have resolved."  *McKinney v. U.S. Dep't of Treasury*, 799

F.2d 1544, 1549 (Fed. Cir. 1986) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 28

(1976)).

To have Article III standing, a plaintiff must establish: "(1) it has suffered an 'injury

in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

B.  Associational Standing

An organization can assert standing on behalf of itself as an institution[3] or on behalf

---

[3] WLF does not have standing to bring suit on its own behalf.  Needless to say, WLF is an organization, not an individual, and thus it is not a Medicare beneficiary eligible for Part D prescription coverage.  In addition, WLF is not a provider of health care services or a provider of information regarding health care or insurance.  *See* Defs.' Opp'n Ex. A, Interrog. Answer # 19 (hereinafter Interrog. Ans. #) (WLF does not disseminate information to its members regarding Part D insurance).

-4-

of its members. *See United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996). "[A]n association has standing to sue on behalf of its members 'when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

In this case, WLF has brought suit in its own name on behalf of Rebecca Fox, Mary Samp, and Edward Samp, individuals who WLF claims are among its members. WLF agrees that they are not members as defined by WLF's Articles of Incorporation. Pl.'s Reply at 13. However, an organization with no formal members can still have associational standing if it "is the functional equivalent of a traditional membership organization." *Fund Democracy LLC v. SEC.*, 278 F.3d 21, 25 (D.C. Cir. 2002) (citing *Hunt*, 432 U.S. at 343-45). Three main characteristics must be present for an entity to meet the test of functional equivalency: (1) it must serve a specialized segment of the community; (2) it must represent individuals that have all the "indicia of membership" including (i) electing the entity's leadership, (ii) serving in the entity, and (iii) financing the entity's activities; and (3) its fortunes must be tied closely to those of its constituency. *Id.*; *see also Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119 (3d Cir. 1997) (formal membership is not required; to show organizational standing under *Hunt*, an organization must prove "indicia of membership"). In *Hunt*, the Supreme Court noted that although the Washington State Apple Advertising Commission did not have members in a traditional sense, the State's apple growers and dealers possessed all the "indicia of membership." The apple growers and dealers alone elected the members of the Commission, they alone were permitted to serve on the Commission, and

they alone financed its activities through assessments levied upon them.  *Hunt*, 432 U.S. at 344-45.

The Commission provided "the means by which [the growers and dealers] express[ed] their

collective views and protect[ed] their collective interests."  *Id.*  Accordingly, the Court held that the

Commission's status as a State agency, as opposed to a traditional voluntary membership

organization, did not preclude it from asserting the claims of the State apple growers and dealers.

*See id.* at 345.

In contrast, the D.C. Circuit Court of Appeals found associational standing lacking

in *American Legal Foundation v. FCC*, 808 F.2d 84 (D.C. Cir. 1987).  Plaintiff in that case, the

American Legal Foundation ("ALF"), was a "media watchdog" organization that purported to act on

behalf of viewers of television news programming.  *Id.* at 90.  The court found that ALF served "no

discrete, stable group of persons with a definable set of common interests" and that ALF supporters

did not play any role in selecting leadership, guiding activities, or financing activities.  *Id.*  As a

result, the court held that ALF was not the functional equivalent of a traditional membership

organization.  *Id.*; *see also Fund Democracy*, 278 F.3d at 26 ("informal consortium" of groups of

mutual fund investors lacked associational standing because the organization was not steered by its

purported members and did not receive funding from such members); *Gettman v. DEA*, 290 F.3d 430

(D.C. Cir. 2002) (magazine did not have standing based on the alleged membership of readers and

subscribers who did not select leadership, guide activities, or finance activities of the magazine);

*Basel Action Network v. Maritime Admin.*, 370 F. Supp. 2d 57 (D.D.C. 2005) (plaintiff Basel Action

Network was a project of Tides Center, and the Center, consisting of numerous such projects, lacked

associational standing, as it was not financed or guided by the projects and project contributors did

not control or direct the Center).

WLF is not likely to have associational standing under *Hunt*'s three-part test for functional equivalency. It has not made a clear showing that it serves a specialized segment of the community, that it represents individuals in this lawsuit who have the three "indicia of membership" identified in *Hunt*, or that its fortunes are tied closely to those members it claims to be representing. Each of these factors will be addressed in turn.

### 1.  Functional Equivalency

#### a.  Representation of Specialized Segment of the Community

First, WLF does not appear to serve a specialized segment of the community. Like ALF, WLF serves "no discrete, stable group of persons with a definable set of common interests." 808 F.2d at 90. WLF describes itself on its website as follows: "National in scope and fully independent, we at WLF commit our resources to working with our friends in government and our legal system to maintain balance in the Courts [sic] and help our government strengthen America's free enterprise system." Washington Legal Foundation, http://www.wlf.org/Resources/WLFMission (last visited Mar. 7, 2007). The organization has "one goal: to defend and promote the principles of freedom and justice." *Id*. WLF advocates "free enterprise principles, responsible government, property rights, a strong national security and defense, and a balanced civil and criminal justice system." *Id*. WLF describes itself in its Complaint as a "public interest law and policy center" that "devotes a substantial portion of its resources to defending the rights of individuals and businesses to go about their affairs without undue interference from government regulators." Compl. ¶ 7. As a representative of all who support free enterprise, freedom, and justice, an exceedingly broad and vague category of individuals, it cannot be said that WLF represents any particular specialized segment of the community. WLF appears to be simply a public interest law firm, not a representative

of a special group.

b.  Indicia of Membership

Second, WLF has not made a clear showing that it represents individuals that have all the "indicia of membership" including (i) electing the entity's leadership, (ii) serving in the entity, and (iii) financing the entity's activities.  WLF has only a limited number of voting members and these do not include Ms. Fox or Mr. and Mrs. Samp.[4]  WLF does not contend that Ms. Fox or the Samps are voting members or that they participate in selecting the leadership of WLF.  Interrog. Ans. # 7 (corporate members who may play a role in selecting board of directors are "not to be confused with the WLF members whose interests WLF is representing in this lawsuit.").  Similarly, WLF has made no showing that Ms. Fox or the Samps in any way serve in WLF.  Further, WLF has not indicated that Ms. Fox or the Samps financially support WLF.[5]  These facts stand in stark contrast to the facts in *Hunt*, in which the apple growers and dealers elected the members of the Commission, served on the Commission, and financed its activities.  *Hunt*, 432 U.S. at 344-45.  Here, as in *American Legal Foundation*, 808 F.2d at 90, there is no showing that Ms. Fox or the Samps play any role in selecting WLF's leadership, guiding its activities, or financing those activities.

WLF explains that financial support is not a requirement of membership in WLF, Interrog. Ans. # 10, and that financial support alone does not result in membership.  According to

---

[4] The directors chose the original voting members, and those original members have chosen the voting members thereafter.  Defs.' Opp'n Ex. E, WLF's Articles of Incorporation; *id*. Ex. F, WLF's By-Laws.

[5] Note also that WLF members do not receive a membership card, they are not required to pay dues, they do not enter into a membership agreement, and there are no general membership meetings.  Interrog. Ans. ## 9, 10, 12.  WLF's website does not indicate how to become a member. *See* http://www.wlf.org (last visited Mar. 7, 2007).

WLF, a person is a "member" of WLF if:

> that person has expressed an interest in associating himself with WLF and/or to work with WLF in achieving common goals. Those individuals who make a monetary contribution to WLF are not deemed members of WLF based solely on that contribution; rather, individuals are granted indicia of membership (including, most importantly, inclusion on mailing lists for WLF's publications and/or periodic reports regarding WLF's activities) only if they provide some additional indication that they wish to associate themselves with WLF. Such an indication would include a request to be placed on one or more of WLF mailing list [sic].

Interrog. Ans. # 7. "In general, members include all those who have asked to be sent copies of WLF's publications on a regular basis and/or periodic reports regarding WLF's activities." Interrog. Ans. # 1.

WLF's broad definition of membership, claiming that every person who is on its mailing list is a "member," has been rejected by the D.C. Circuit. In *Gettman*, 290 F.3d at 435, the court rejected the contention of High Times Magazine that its readers and subscribers were "members." The court held that the magazine did not have associational standing because it had readers and subscribers, not members, and such readers and subscribers did not select the magazine's leadership, guide its activities, or finance its activities. *Id.*

Similarly, WLF's claim that "work[ing] with WLF in achieving common goals" constitutes membership for standing purposes is unavailing under D.C. Circuit law. In *Fund Democracy*, 278 F.3d at 25, the plaintiff organization claimed that it represented an informal consortium of groups made up of individual mutual fund investors and that in the past it had worked closely with these groups to conduct advocacy initiatives, such as petitioning the SEC to adopt new rules. The court explained, "Fund Democracy's past work with various groups of individual

investors does not render these groups the equivalent of members of Fund Democracy." *Id*. The court went on to hold that Fund Democracy did not have associational standing under the *Hunt* "indicia of membership" criteria. *Id*. at 26.

WLF argues further that the "'most significant' indicia of membership are whether the individuals view themselves as members of the organization and whether they are viewed by the organization as members." Pl.'s Reply at 13. WLF cites no authority for this proposition. The "indicia of membership" criteria set out by the Supreme Court in *Hunt* constitutes the standard that must be met. As explained above, WLF fails to make a clear showing that the "members" on whose behalf it brought this suit meet these criteria.

WLF attempts to distinguish *ALF*, *Fund Democracy*, *Gettman*, and *Basel Action*, arguing that in none of those cases did the plaintiff organization claim to represent named individual members, like WLF does here. This is a distinction without a difference. Here, while WLF claims to represent certain named members, those alleged members bear no indicia of membership. This case is analogous to *ALF*, *Fund Democracy*, *Gettman*, and *Basel Action*, where the plaintiff organizations claimed to represent members who did not play any role in selecting leadership, guiding activities, or financing activities.

WLF's associational standing claim is further weakened by the fact that it manufactured "members" for the purposes of this lawsuit after the fact — that is, WLF first determined to bring this suit and only then identified Ms. Fox and the Samps as persons on whose behalf it would litigate. WLF's Litigation Review Committee, composed of five persons, is "charged with ensuring that proposed litigation activity is consistent with WLF's public-interest mission." Interrog. Ans. # 16. The Committee considered and approved the recommendation of a WLF staff

-10-

member to file this suit. *Id*. WLF then identified Ms. Fox and the Samps and obtained their permission for the suit. *Id*. # 16 (after Committee approval, WLF obtains consent of individuals on whose behalf it wishes to litigate); *see also id*. # 17 ("The individuals thereafter agreed that WLF should represent their First Amendment interests by filing this suit"). WLF did not communicate with Ms. Fox or the Samps until "*after* WLF had made a decision that it wished to proceed with litigation." *Id*. # 18 (emphasis added).

### c.  Coextensive Interests of the Organization and Its Members

Third and finally, because WLF does not appear to represent or to be funded by any specialized group, it is not likely that WLF can show that its fortunes are tied closely to those of any members. WLF is funded by more than 8,000 individuals and entities, *id*. # 3, and has in excess of 5,000 members. *Id*. # 2. WLF does not keep an official membership roll and does not require its members to pay dues or to make any monetary contribution. *Id*. ## 2, 6, 10. WLF does even not know how many of its members are over age 65 and eligible to enroll in Medicare Part D. *Id*. # 5.

WLF contends that "[t]he D.C. Circuit has on several occasions upheld the [WLF's] standing to assert claims based on its members' constitutional rights, in the face of federal government challenges to that standing." Pl.'s Mem. at 52. In making this assertion, WLF erroneously relies on *Abigail Alliance for Better Access to Developmental Drugs v. Von Eschenbach*, 469 F.3d 129 (D.C. Cir. 2006) and *Washington Legal Foundation v. Henney*, 202 F.3d 331 (D.C. Cir. 2000). In *Abigail Alliance*, WLF conceded at oral argument that it lacked Article III standing. *Abigail Alliance for Better Access to Developmental Drugs v. Von Eschenbach*, 445 F.3d 470, 475 n.4 (D.C. Cir. 2006). WLF cites the D.C. Circuit opinion on rehearing, which upheld the standing of the Abigail Alliance organization, not WLF. 469 F.3d at 134.

WLF fares no better in its reliance on *Henney*. WLF argues that the D.C. Circuit only dismissed the appeal, not the case, that part of the injunction put in place by the district court against the FDA remains in place, and that the court of appeals must have resolved the issue of standing in WLF's favor or it would not have allowed part of the injunction to remain in place. Pl.'s Reply at 17. The *Henney* opinion did not address the issue of WLF's standing at all,[6] and the D.C. Circuit dismissed the case for lack of a constitutional case or controversy. 202 F.3d at 336-37. Moreover, the injunction does not in fact remain in place; on remand the district court determined that the entire injunction had been vacated. *Wash. Legal Found. v. Henney*, 128 F. Supp. 2d 11, 15 (D.D.C. 2000) (on remand from *Henney*, 202 F.3d 331).

### 2.  Interests Must Be Germane to Organization's Purpose

It does not appear likely that WLF can prove that it is the functional equivalent of a membership organization, and it also does not appear likely that WLF can show that the interests it represents here are "germane" to its purpose. *Hunt*, 432 U.S. at 343 ("[A]n association has standing to sue on behalf of its members 'when . . . (b) the interests it seeks to protect are germane to the organization's purpose . . . .'"). As WLF points out, the threshold for the "germaneness" requirement is quite low. "Germaneness is satisfied by a 'mere pertinence' between litigation subject and an organization's purpose." *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 111 (D.C. Cir. 1990); *accord Humane Society v. Hodel*, 840 F.2d 45, 56 (D.C. Cir. 1988) ("Germaneness . . . require[s] only than an organization's litigation goals be pertinent to its special expertise and the grounds that bring its membership together."). In *Humane Society*, the court emphasized that the germaneness

---

[6] "Where a court has simply assumed standing, that assumption creates no precedent upon which future litigants may rely." *Gettman*, 290 F.3d at 426.

requirement would preclude only a "narrow class of cases," 840 F.2d at 57. Then the court gave as

an example of such preclusion a suit by WLF, *McKinney v. United States Department of Treasury*,

799 F.2d 1544 (Fed. Cir. 1986). 840 F.2d at 58. In *McKinney*, the Federal Circuit held that WLF

is a public interest law firm and that it did not have standing as a purported representative of

American producers and workers to bring suit against the Customs Service to bar the importation of

Soviet-made goods. 799 F.2d at 1553. The D.C. Circuit in *Humane Society* further elaborated, "[t]he

germaneness prong serves as a backstop against such suits. It ensures a modicum of concrete

adverseness by reconciling membership concerns and litigation topics by preventing associations

from being merely law firms with standing." 840 F.2d at 58. WLF's role as a public interest law

firm does not appear to have changed since the ruling in *McKinney*. WLF's stated purpose is to

pursue freedom, justice, and free enterprise through litigation. Its purpose does not appear to be

germane to the interests of the Medicare Part D subscribers it wishes to represent here.

       In sum, WLF has failed to meet its burden of showing likelihood of success on the

merits because it has failed to make a clear showing that it has standing to bring this suit in its own

name. It is not likely to prove that it is the functional equivalent of a membership organization or

that the interests it represents here are germane to its purpose as a public interest law firm.

### IV. CONCLUSION

       For the reasons stated above, WLF's motion for preliminary injunction [Dkt. # 8] will

be denied. A memorializing order accompanies this Memorandum Opinion.


Date:   March 19, 2007           _____/s/_____
                                    ROSEMARY M. COLLYER
                                    United States District Judge