UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **REBECCA E. FOX, MARY A. SAMP,** and **EDWARD J. SAMP JR.,** <br><br> Plaintiffs, <br><br> v. <br><br> **MICHAEL O. LEAVITT**, in his official capacity as Secretary, U.S. Department of Health and Human Services, <br><br> and <br><br> **LESLIE V. NORWALK**, in her official capacity as Acting Administrator, Centers for Medicare and Medicaid Services, <br><br> Defendants. | Case No. 1:06CV01490 (RMC) |

**DECLARATION OF REBECCA E. FOX**

I, Rebecca E. Fox, do hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. My name is Rebecca E. Fox. I am a resident of the Commonwealth of Pennsylvania, and I am of sufficient competence to make this declaration. I make this declaration upon my personal knowledge and in support of the Plaintiffs' Motion for Summary Judgment.

2. I am 88 years old and a widow. My husband, a World War II veteran, died 24 years ago. I continue to live independently in our family home and drive my automobile.

3. I am eligible to participate in the Medicare program, and have been a beneficiary since I became 65 years old.

4. Prior to the availability of prescription drugs under the Medicare program, I

participated in the "Lilly Answers" program. I was very pleased with the program and the benefits I received. For the two drugs prescribed by my physician, one a brand name Lilly drug which sold for about $60, I paid a significantly reduced rate.

     5. Around June of 2005, I received a letter from the Pennsylvania Department of Aging informing me that as a result of my income level, I qualified for the property tax rebate program and would be eligible to participate in the PACE and PACE NET prescription drug benefit program for eligible residents of Pennsylvania. I completed the application and sent it in. A copy of the letter is attached.

     6. In November of 2005, I received a letter from Lilly stating that because of the new Medicare Part D drug benefit that would become effective as of January 1, 2006, the Lilly program would conclude May 15, 2006.

     7. Around January of 2006, I received a letter from the Governor of Pennsylvania advising me about my eligibility to participate in the new federal Medicare Part D drug benefit. He stated how he knew for many Pennsylvania senior citizens the enrollment process for this benefit was confusing. The letter said that because I was already enrolled in PACE and PACE NET, I had a drug benefit, and the PACE program and the Department of Aging would review my records, the drugs I used and the pharmacies where I buy these medications, and I would be enrolled in both PACE and a federally approved pharmaceutical assistance plan that best met my needs.

     According to the Governor, I should just stay enrolled in PACE and PACE NET and wait for PACE program mailings that would help me sort through all the options. A copy of that letter is attached.

8. I subsequently received a letter from the Director of the PACE NET program advising me of my options to enroll in the Medicare prescription drug benefit through May 15, 2006. The letter said that my PACE/PACE NET coverage was as good as the coverage offered through this new Medicare drug benefit program, and this meant I had "credible coverage." A copy of the letter is attached. I also received a packet of information from the PACE NET program describing possible enrollment options, but I found the packet unhelpful in terms of making any sort of enrollment decisions.

9. About this same time, I began to receive circulars, brochures, and other information for the various Medicare Part D plans, in particular the Highmark or Blue Cross/Blue Shield Plan in my area, Pittsburgh, and the University of Pittsburgh Medical Center Plan, called "UPMC." The information which I received looked like two small books. As I was trying to evaluate these plans and would call for information, I would be sent the same circulars or brochures each time, none of which answered my questions in trying to compare what I was getting with "Lilly Answers," or the PACE NET program.

10. At this point, I was confused about what program would be best for me, recognizing I was only taking two drugs, but mindful that given my age, there was always the possibility additional drugs could be prescribed by my physician.

11. I thought my local pharmacist, Ron Orvick, could help me better understand all the information I had now received. I had been a customer for many years and recommended many of my friends to him.

12. When I visited with him, I was surprised to be told he could not advise me on any of the programs, and I would just have to pick one, and there were many to pick from.

13. At that point, I knew that I probably should be making some sort of decision regarding enrollment in Medicare Part D, but I simply did not know where to turn for assistance. The letters I had received from Pennsylvania suggested to me that they would be providing me with specific advice regarding which Part D plan, if any, I should enroll in, so I decided to defer any action until I received that advice.

14. All seemed to be going well during the summer of 2006. I continued to get my drugs from the local pharmacy, and the amount I was paying was about the same that I had been paying in prior years. However, around September of 2006, my pharmacist informed me that I had past-due bills totaling $129. He explained that the amount of my monthly bills had gone up as a result of the cancellation of the "Lilly Answers" program in May 2006, and that I had not enrolled in a Part D plan that would have compensated for that cancellation. It turned out that I had been undercharged on my bills for several months because sales clerks at the pharmacy had charged me the amount listed on the top sales slip attached to my prescription drug package, rather than computing the total for all the attached sales slips.

15. Needless to say, I became quite upset when I learned that I faced a large and unexpected bill. I had relied on Pennsylvania to guide me through the Part D enrollment process, and I felt that they had let me down.

16. I called PACE NET and was told by a representative that I needed to pick a Part D plan and that PACE NET had done nothing to get me enrolled in a Part D plan as Pennsylvania's earlier letters had suggested would happen. She said that while a variety of Part D plans were available to me, she recommended – in light of the relatively small amount of medication I take – that I limit my choices to two plans: Humana or AARP.

17. My pharmacist declined my request to recommend one or the other plan. I then contacted both Humana and AARP by phone regarding their Part D plans. The AARP representative agreed to send me an application in the mail, but the Humana representative tried to pressure me to sign up for their program over the phone. I do not like such pressure tactics; so although I asked Humana to send me an application in the mail, I decided to sign up with AARP.

18. I submitted an application to AARP but then did not hear from them for a while, and then the Humana application arrived in the mail. At that point, I called PACE NET again. As I understood the advice of the PACE NET representative, she told me that it was okay to send in an application to Humana as well, in case I was not accepted by AARP.

19. Both companies ended up accepting my applications, so I was now enrolled in two separate Part D plans. I was very confused regarding what I should do at that point. Finally, I returned to my pharmacist, and at my request he helped me to cancel my Humana enrollment without financial penalty.

20. I continue to be enrolled in AARP to this day. I am reasonably happy with the plan; my monthly expenses for prescription drugs returned to the level at which they had been when I was enrolled in the "Lilly Answers" program.

21. I was very upset by the entire process that led to my enrollment in AARP's Medicare Part D plan. I felt as though there was no place for someone in my position to turn for meaningful advice regarding the choice of Part D plans. The Commonwealth of Pennsylvania sent me misleading letters that caused me to delay taking action while I waited for what I thought would be specific advice regarding choice of plans. The only information

they sent me was too detailed for me to understand, and it did not make any specific plan recommendations – which was the one piece of information I most wanted.  The massive brochures sent to me by Part D plans were similarly unhelpful.  The one person within the health care field with whom I regularly interact – my pharmacist – told me that he was not in a position to provide me with specific advice on choice of a plan.  When I called PACE NET, they were reasonably helpful in recommending plans, but even they would not recommend a specific plan, and their confusing advice led me to mistakenly sign up for two Part D Plans at the same time.  As a result, I paid more for prescription drugs in 2006 than I should have.

22.  I related what had occurred to my friends at church and Meals on Wheels, where I volunteer.  I learned that my confusion was not unique; I learned of seniors getting "letters of no coverage," and of one close friend paying more in total for her Medicare Part D Plan than the cost of her drugs.  One friend explained how she finally went to Father Ryan, the head of the Catholic social services program in our area, so he could tell her what to do.  It was very sad to hear about all these problems, especially from seniors older than me, and many who had significantly greater medical needs.  I resolved to do something about the problem by becoming a party to this lawsuit.

23.  At my age, I pride myself, as do many of my friends, at being independent and fully capable of making our own decisions.  All we are asking is to have the Medicare program permit us to get meaningful information, to allow our pharmacist, physicians, and other care givers to at least tell us what they think might be the best plan and drug benefits for us, as they best know our health care needs, so we can consider all sources of helpful information.  I evaluate comparative information every day when I shop for food or clothes, buy gasoline,

evaluate comparative information every day when I shop for food or clothes, buy gasoline, have my car serviced, and the like. I believe that I and other seniors would be better served by our Medicare program if we were permitted to get that type of information from a variety of sources.

24. I am greatly concerned that if my health care needs change and my physician prescribes additional medications, I could end up being caught in the same predicament as I have just experienced. In that event, I would want to be able to rely on the advice of my health care providers regarding which Part D plan is best for me. Moreover, I would like to be able to receive information on an on-going basis regarding whether plans other than AARP would better serve my current needs. With the open enrollment period approaching at the end of the year, now is a particularly good time to be able to get that kind of information from my pharmacist.

Under penalty of perjury, I state on this 9th day of October, 2007, that I have read the foregoing declaration consisting of twenty-four (24) numbered paragraphs, and the statements herein are true and correct to the best of my knowledge, information, and belief.

*Rebecca E. Fox*
Rebecca E. Fox



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF AGING
Harrisburg, PA 17101-1919

June 1, 2005

Dear Cardholder,

As a Pennsylvania resident, you have already participated in the Property Tax/Rent Rebate program, and you have been selected as a person who may be eligible to receive PACE or PACENET benefits.

The PACE/PACENET programs are the Commonwealth of Pennsylvania's prescription benefit plans that help older Pennsylvania residents reduce out-of-pocket expenses for prescription medications. Applying for this benefit is free. Once you are enrolled, you will be able to purchase your prescription drugs for a very low cost. Please see the reverse side of this letter for information regarding completion of the application as well as eligibility and program requirements.

Please review the enclosed enrollment application and complete any missing information. Once you have completed the application, sign it in section E. If your spouse is also applying, your spouse must also sign the application. A return envelope has been provided for you.

If you have any questions regarding the Program or need help completing the application, please contact our Cardholder Services department toll free at 1-800-225-7223.

Sincerely,

Thomas M. Snedden
Director
The PACE Program

Enclosures

**Please see the back of this letter for complete instructions.**

PT/RRQ0001



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE GOVERNOR
HARRISBURG

THE GOVERNOR

January 24, 2006

Dear PACE Cardholder:

As you are aware, on January 1st, you were eligible to participate in the new federal Medicare Part D drug benefit. I know that for many Pennsylvania seniors the enrollment process for this benefit has been confusing. Because you are a participant in the Pennsylvania Pharmaceutical Assistance program known as PACE, I wanted to share some very important information with you.

Because you are enrolled in PACE or PACENET, you already have a drug benefit. You can and should stay enrolled. Over the coming weeks, the PACE program and the Department of Aging will review your records, both the drugs that you use and the pharmacies where you buy these medications. You will then be enrolled in both PACE and a federally approved pharmaceutical assistance plan that best meets your needs. Your current coverage will not be diminished by this change.

Remember, for now, just stay enrolled in PACE or PACENET. Wait for the PACE program mailing which will help you sort through all the options by providing you with a recommendation about the plan that best meets your personal needs.

If you have any questions or concerns, please call the PACE toll-free cardholder number at 1-800-225-7223.

Sincerely yours,

Edward G. Rendell
Governor



**FORMAL NOTIFICATION**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF AGING
Harrisburg, PA 17101-1919

**PACE and PACENET are Creditable Coverage**

```
**************AUTO**5-DIGIT 151
[barcode address block]
REBECCA FOX
105 SOUTHVIEW DR
CORAOPOLIS, PA  15108-3714
```

Dear PACE/PACENET Cardholder:

Medicare beneficiaries have the option to enroll in the Medicare prescription drug benefit through May 15, 2006. However, your PACE/PACENET coverage is as good as the coverage that is offered through this new benefit. This means you have "creditable coverage." If you remain enrolled in PACE/PACENET and decide to enroll in the Medicare drug benefit after May 15, 2006, you will not have to pay a penalty on your premiums. To avoid the penalty, however, you will need a copy of this letter.

You should also know that if your PACE/PACENET benefits are cancelled and you do not have any other prescription benefits that are considered "creditable coverage," you will have to enroll in the new Medicare benefit if you do not want to pay a premium penalty. If you go 63 days or longer without prescription drug benefits that are at least as good as the coverage offered through the Medicare benefit, you will have to pay a 1% penalty on the monthly premium for every month you go without coverage.

If you have any questions regarding the Medicare prescription drug benefit or your PACE/PACENET benefits, please call our Cardholder Services Department at 1-800-225-7223.

Sincerely,

Thomas M. Snedden
Director
The PACE Program