## DECLARATION OF JEFFREY A. KELMAN, M.D.

Jeffrey A. Kelman, M.D., pursuant to 28 U.S.C. § 1746, declares the following under penalty of perjury:

1. I am Chief Medical Officer in the Center for Beneficiary Choices ("CBC") within the Centers for Medicare & Medicaid Services ("CMS"). CMS is the federal agency within the United States Department of Health and Human Services responsible for administering the Medicare and Medicaid programs. As Chief Medical Officer in CBC, I am directly responsible for clinical subject matter oversight of the Medicare Part D drug benefit. I have received board certification in internal medicine, pulmonary disease, and geriatrics, and am certified in medical direction in long term care. Before I joined the government, I was the medical director at Collington Lifecare center, which provided services for seniors at all levels of care.

2. I am familiar with the subject matter of the lawsuit captioned Fox v. Leavitt, No. 06-1490 (D.D.C.), which involves the portion of CMS's Medicare Part D marketing guidelines that prohibit provider steering of beneficiaries to a Part D drug plan (either a stand alone drug plan or a Medicare Advantage plan that also offers a Part D benefit). The statements made in this Declaration are based on my personal knowledge.

3. The CMS policy prohibiting provider steering of Medicare beneficiaries to a specific Part D drug plans is based on our responsibility to protect our beneficiaries. This responsibility is particularly relevant in the long term care/nursing home setting, where the majority of residents are poor, cognitively impaired, and/or frail. In this setting, where residents are immobile, are constrained in the choice of pharmacies to a long term care pharmacy ("LTCP") selected by the nursing home, and dependent on providers who are on the nursing home staff, the risk of undue influence is very high.

4. For residents in a nursing home, with limited potential to make independent pharmacy choice, the LTCP has strong incentive and ability to maximize drug costs and sales. Plan contracts vary across the Part D benefit in terms of negotiated price; and while this effect may be moderated somewhat by competition among network pharmacies in the community, the resident in a nursing home has no ability to change pharmacy vendors. By "steering" residents to plans that pay the highest reimbursement for specific drugs, the LTCP has significant potential and incentive to maximize its profits.

5. The LTCPs also have rebate arrangements with drug manufactures, based on market share within specific drug classes. The ability to "move share" towards high rebate drugs has traditionally been accomplished by long term care consultant pharmacists, who are generally supplied to homes by the LTCPs and who make recommendations to prescribing physicians. The financial incentives underlying these recommendations are not disclosed to the residents or their families or representatives. Under the Part D benefit, this kind of rebate-driven dispensing can only be accomplished by steering residents to plans with formularies that contain rebated drugs, or that contain the most rebated drugs.

6. Provider recommendations on plan choice and drug choice should be based solely on beneficiary healthcare needs, and not be subject to conflicts of interest related to the increased sale of more profitable drugs as described above. The marketing guidelines' prohibition on provider steering is designed to preclude provider recommendations based on such conflicts of interest.

Dated:    November __9__, 2007
          Washington, D.C.

_____
JEFFREY A. KELMAN, M.D.