UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WASHINGTON LEGAL FOUNDATION,**  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>**MICHAEL O. LEAVITT,** in his official  )<br>capacity as Secretary, U.S. Department  )<br>of Health and Human Services,  )<br>)<br>and  )<br>)<br>**LESLIE V. NORWALK**, in her official  )<br>capacity as Acting Administrator, Centers  )<br>for Medicare and Medicaid Services,  )<br>)<br>Defendants.  )<br>_____) | CA No. 1:06cv01490 (RMC)<br>Judge Collyer |

## PLAINTIFFS' ANSWERS AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Washington Legal Foundation (WLF) hereby files its answers and objections to Defendants Michael O. Leavitt's and Leslie V. Norwalk's First Set of Interrogatories. WLF reserves the right to supplement these answers when additional material pertinent to this lawsuit becomes available and has been reviewed by it.

### GENERAL OBJECTIONS

1. Plaintiff WLF objects to each interrogatory to the extent that it seeks information which encompasses confidential attorney-client communications or attorney work product, or which seeks to impose duties beyond those imposed under Fed.R.Civ.P. 26. Such discovery is protected and will not be provided.

## INTERROGATORIES

### INTERROGATORY NO. 1

The Complaint refers to "members and supporters" of the firm. ¶ 9. What criteria distinguish members of the firm from supporters of the firm.

#### ANSWER

WLF answers this interrogatory and subsequent interrogatories with the understanding that they request the intended meaning of words used in the complaint. WLF's answer should not be construed to apply outside of that context or to suggest that WLF has assigned formal definitions to those words, applicable in all context within which WLF may have in the past, or will in the future, use those words.

The word "supporters" referred to those who, in the recent past, have provided monetary support to WLF. Such individuals and entities may or may not also be members of WLF, depending on their individual circumstances. The word "members" referred to those who have expressed an interest in associating themselves with WLF and/or to work with WLF in achieving common goals. As used in Paragraph 9 of the complaint, a "member" of WLF is also a "supporter" of WLF if the individual has provided financial support to WLF. In general, members include all those who have asked to be sent copies of WLF's publications on a regular basis and/or periodic reports regarding WLF's activities.

### INTERROGATORY NO. 2

How many persons are members of the firm.

**ANSWER**

WLF does not maintain an official membership roll that would allow for precise computation of the number of individuals it deems members – a category based, as noted in response to Interrogatory No. 1, on an expression of an interest in associating themselves with WLF and/or to work with WLF in achieving common goals. WLF's best estimate is that the number of such individuals and entities is in excess of 5,000.

**INTERROGATORY NO. 3**

How many persons are supporters of the firm?

**ANSWER**

WLF estimates that there are several million individuals and entities across the United States who are supporters of the Washington Legal Foundation in the sense that they are aware of WLF and support its goals. If by "supporters" Defendants are referring to those who in the recent past have provided monetary support to WLF, WLF's best estimate is that the number of such individuals and entities is in excess of 8,000.

**INTERROGATORY NO. 4**

How many persons are both members and supporters of the firm?

**ANSWER**

Objection. The request is overly burdensome. WLF does not know the answer to that question and does not believe that it could derive an accurate answer without extraordinary effort. Without waiving that objection, WLF states that most of those whom WLF deems to be members of WLF have provided monetary support to WLF in the recent past, so that the

number of those fitting in both categories is not significantly less than the number of members cited in response to Interrogatory No. 2 (in excess of 5,000).

### INTERROGATORY NO. 5

How many members of the firm are entitled to enroll in Medicare Part D.

### ANSWER

Objection. The request is overly burdensome. WLF does not know the answer to that question and does not believe that it could derive an accurate answer without extraordinary effort. Without waiving that objection, WLF states that it has never surveyed its members to determine how many are entitled to enroll in Medicare Part D. WLF understands that most anyone age 65 or older is so eligible. WLF is aware of the identity of a fair number of its individual members who are age 65 or older, and it is thus anecdotally aware that numerous members are so eligible. The circumstances of three such members – Rebecca Fox, Edward Samp, and Mary Samp – are outlined in detail in WLF's motion for a preliminary injunction.

### INTERROGATORY NO. 6

Does the firm maintain a list, listing, or other compilation of the names of the persons who are its members.

### ANSWER

WLF does not maintain in a single file a compilation of all its members; rather, that information is spread across a number of files. Taken as an aggregate, WLF's files include the names of all those it deems members as set forth in its answer to Interrogatory No. 1; *i.e.*, those who have expressed an interest in associating themselves with WLF and/or to work with WLF

in achieving common goals.

**INTERROGATORY NO. 7**

What criteria determine whether a person is or is not a member of the firm.

**ANSWER**

WLF deems a person a member of WLF if that person has expressed an interest in associating himself with WLF and/or to work with WLF in achieving common goals. Those individuals who make a monetary contribution to WLF are not deemed members of WLF based solely on that contribution; rather, individuals are granted indicia of membership (including, most importantly, inclusion on mailing lists for WLF's publications and/or periodic reports regarding WLF's activities) only if they provide some additional indication that they wish to associate themselves with WLF. Such an indication would include a request to be placed on one or more WLF mailing list. Members are deemed to lose that membership status if they affirmatively state a desire to disassociate themselves from WLF, or if a significant period of time elapses during which WLF has received no communication from them.

In addition to the understanding of "member" described above, the word "member" has a distinct meaning assigned to it by WLF's By-laws, a copy of which is being produced. There are a very limited number of "members" of the corporation as defined in the By-laws; they can, under certain circumstances, play a role in selecting individuals to serve on the Board of Directors. These corporate "members" are not to be confused with the WLF members whose interests WLF is representing in this lawsuit.

**INTERROGATORY NO. 8**

Identify and describe each means (*e.g.*, letter, notice, oral advice, e-mail, website) by which the firm discloses to a person who may consider whether or not to become a member or supporter of the firm what actions of the person will result in that person becoming a member of the firm and what actions will result in that person remaining a new member of the firm.

**ANSWER**

Objection. The interrogatory does not accurately describe the nature of membership in WLF and thus cannot be answered as written. Without waiving that objection, WLF states that it categorizes as members those individuals and entities that express an interest in associating themselves with WLF and/or working with WLF in achieving common goals. WLF assumes that those who do not wish to associate themselves with WLF and/or to work with WLF in achieving common goals will not express such an interest to WLF.

Generally, when individuals and entities express an interest in associating themselves with WLF and/or working with WLF in achieving common goals, WLF will write a letter to say thanks for that expression of interest, to pledge to work with those individuals and entities in the future, and to outline steps WLF plans to take to achieve common goals. WLF thereafter continues to write and email to such individuals and entities on a regular basis, for as long as WLF has reason to believe that they wish to continue to be associated with WLF. When WLF desires to file a lawsuit that asserts the interests of specific members, it will do so only after informing those individuals of its intent, obtaining their consent to do so, and determining whether those individuals consent to the public release of their names as WLF members. When individual members agree to accept a specific status within WLF – such as appointment to one of WLF's boards, including its Legal Policy Advisory Board and its National Board of Advisors – they are explicitly informed by letter of their appointments.

**INTERROGATORY NO. 9**

Identify and describe each type of written (including electronic) or acknowledgement or record of his or her membership that a member of the firm receives (*e.g.*, a membership card).

**ANSWER**

Objection. The interrogatory does not accurately describe the nature of membership in WLF and thus cannot be answered as written. Without waiving that objection, WLF states that when individuals and entities express an interest in associating themselves with WLF and/or working with WLF in achieving common goals, WLF generally will write a letter to say "thank you" for the expression of interest, to pledge to work with those individuals and entities in the future, and to outline steps WLF plans to take to achieve common goals. If such correspondence constitutes what Defendants would deem a "membership card," then WLF generally sends membership cards to all such individuals. Such correspondence only irregularly includes the word "membership," but it virtually always includes an acknowledgment that WLF and the recipient have mutually agreed to associate with one another and/or to work together in achieving common goals.

**INTERROGATORY NO. 10**

Once a person has become a member of the firm, what actions, if any, are necessary and/or sufficient to retain membership (*e.g.*, a requirement that membership be "renewed" periodically or a requirement to pay dues) and what actions (*e.g.,* letter of resignation) or inactions (*e.g.,* failure to pay dues), if any, are necessary and/or sufficient to withdraw from membership.

### ANSWER

An expressed desire to maintain one's status is always a sufficient condition for WLF to continue to deem an individual or entity to be a member. There is no requirement, for example, that one make a monetary contribution to WLF; many members do not make regular financial contributions. If one submits a "letter of resignation" (*e.g.,* a letter stating that one no longer wishes to be associated with WLF), that is sufficient to end the membership relationship. While there is no strict time limit on how long an individual or entity will continue to be deemed a member without responding in some way to WLF's correspondence, after some number of years without response WLF generally concludes that the individual or entity no longer desires to associate with WLF or to otherwise work with WLF in achieving common goals.

### INTERROGATORY NO. 11

What obligations, including, but not limited to, paying dues or other membership fees, do members have to the firm.

### ANSWER

None.

### INTERROGATORY NO. 12

How often do members of the firm meet, and how are members informed of the time and place of such meetings.

### ANSWER

WLF does not conduct general membership meetings. WLF members who serve on

various WLF boards and committees are invited to all such meetings of those boards and committees. Generally, they are informed of such meetings by letter and sometimes by email as well.

**INTERROGATORY NO. 13**

How often, by whom, and through what mechanism (*e.g.*, annually by vote of the membership at a membership meeting) are any officers and directors of the firm chosen?

**ANSWER**

The processes for selecting WLF's officers and directors are described in WLF's By-laws, a copy of which is being provided.

**INTERROGATORY NO. 14**

How does the firm report to its members what litigation it is undertaking on behalf of its members?

**ANSWER**

WLF reports on its litigation activities through periodic reports mailed to its members. Special mailings are generally sent to report any significant developments in the litigation. Any member on whose specific behalf a particular lawsuit is filed generally receives far more frequent mailed updates on the litigation. Those members known to have particular interest in a lawsuit will also receive more frequent updates, even if they are not the members whose rights WLF is asserting.

**INTERROGATORY NO. 15**

What means does the firm make available to its members to disassociate themselves from the firm's representation of their interests in a particular case and in general?

**ANSWER**

Objection. The question assumes that WLF, in each of the scores of lawsuits in which it is participates each year, purports to represent the interests of all of its members. That assumption is incorrect; WLF does not purport to represent the interests of any specific member who has not explicitly agreed to such representation. Moreover, because its membership roll is confidential, there is no possibility that the public might perceive that specific WLF members support a specific piece of litigation. Notwithstanding that objection, WLF states that when WLF agrees to represent the interests of a member in a particular lawsuit, it invariably informs the member of his or her right to determine that (s)he no longer desires to have WLF represent his or her interests. If the member communicates by any means a desire to no longer be represented, WLF complies.

It has happened on occasion that a WLF member has formally communicated a desire no longer to be associated with WLF because of disagreement with WLF litigation activity. But in no such instance had WLF ever asserted that it was representing that member's interests in the litigation. WLF never publicly discloses the names of its members and supporters (other than those who accept a position on a WLF board or committee), nor does it disclose the names of those who discontinue membership or support. Individual members and supporters are, of course, free to disclose their status to the public, as are former members and supporters.

**INTERROGATORY NO. 16**

By what mechanism or mechanisms (*e.g.,* membership meetings, vote or other poll of the membership) does the firm decide which legal actions the firm will or will not pursue on its members' behalf?

**ANSWER**

WLF maintains a Litigation Review Committee (LRC) that meets periodically to consider recommendations from WLF's staff that WLF undertake specific litigation. The LRC is composed of five members, only one of whom is a WLF employee. The LRC is charged with ensuring that proposed litigation activity is consistent with WLF's public-interest mission; such activity does not proceed without approval from the LRC. If, after LRC approval, WLF desires to pursue the litigation on behalf of specific WLF members, it will do so only after obtaining the explicit consent of those specific members. WLF's litigation agenda is shaped to a considerable degree by recommendations it receives from members.

**INTERROGATORY NO. 17**

Please describe in reasonable detail how that mechanism (or those mechanisms) operated in this case to authorize this suit.

**ANSWER**

Objection. WLF objects to this interrogatory to the extent that it seeks the disclosure of information protected by attorney-client privilege and the work product doctrine. Notwithstanding that objection, WLF states that it has long been concerned by federal agencies that suppress truthful information in violation of the First Amendment, and challenging such speech restrictions has long been part of WLF's institutional mission. WLF wrote to Defendants in April 2006 to object to their restrictions on truthful speech regarding Medicare Part D. When WLF received no response, WLF's staff then recommended that WLF initiate

11

federal court litigation. The LRC approved WLF's litigation as consistent with WLF's public interest mission. WLF identified a number of WLF members who were adversely affected by Defendants' speech suppression policies. Those individuals thereafter agreed that WLF should represent their First Amendment interests by filing this lawsuit.

### INTERROGATORY NO. 18

Please describe all communications from a member to the firm either requesting that the firm bring this action on behalf of its members and/or reporting to the firm facts that you contend constitute injury in fact to the member attributable to the policy you challenge. Your description of each communication should include the means of communication (e.g., phone call, letter, e-mail); the date of the communication; the member's name, address, phone number, and e-mail address; the name of the person receiving the communication on the firm's behalf, and the person's title within the firm; and a brief description of the substance of the communication. In the event that more than twenty members of the firm made such communications, please state the number of members making such communications and describe only 1) the first ten such communications, 2) the ten communications that, at the time the firm decided to bring this action, were the most recent such communications; and 3) any other communications from members whose individual circumstances you will rely upon to establish injury to your members. Except with respect to communications with members whose individual circumstances you will rely upon to establish injury to your members, this request is limited to communications occurring before the date on which the firm decided to bring this action.

### ANSWER

Objection. The interrogatory seeks information which constitutes confidential attorney-client communications; it also incorrectly assumes that WLF filed this lawsuit on behalf of all its members generally. Notwithstanding those objections, WLF states that the WLF members whose First Amendment rights it is asserting, as a basis for WLF's standing, are Rebecca Fox, Mary Samp, and Edward Samp. WLF has previously supplied contact information for those three members. WLF had no communications with those members regarding this lawsuit – nor did it receive such communications from other, similarly-situated

members – until after WLF had made a decision that it wished to proceed with litigation. As a result of communications (both by letter and by telephone) between those three members and WLF attorneys, the parties agreed as follows: (1) WLF would represent them in this litigation, to seek an injunction against further violations of their First Amendment rights; (2) WLF would not name the three as plaintiffs in the suit but rather would file suit in its own name and assert that it was suing on behalf of WLF members Rebecca Fox, Mary Samp, and Edward Samp. WLF objects to disclosure of any further details of those communications, on grounds that they constitute confidential attorney-client communications. WLF is producing all documents in its possession or control concerning efforts by Rebecca Fox, Mary Samp, and/or Edward Samp to determine which Medicare Part D plans were and are most appropriate for them.

**INTERROGATORY NO. 19**

Other than filing this lawsuit, what actions does the firm take to disseminate to its members information about Medicare Part D insurance and/or information that would help its members choose a Medicare Part D plan.

**ANSWER**

Providing health insurance information is not a part of WLF's mission. Neither this lawsuit nor any other action WLF has taken can accurately be described as an effort to disseminate to its members information about Medicare Part D insurance. This lawsuit is part of WLF's core mission to prevent the federal government from suppressing truthful information, particularly in the health care arena.

I declare under penalty of perjury this 1st day of February, 2007, that the foregoing answers and objections to these interrogatories are true and accurate to the best of my information and belief.

   /s/ Richard A. Samp
Richard A. Samp, Chief Counsel
Washington Legal Foundation


Respectfully submitted,


   /s/ Richard A. Samp
Daniel J. Popeo
Richard A. Samp
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave., NW
Washington, DC  20036
(202) 588-0302

Dated:  February 1, 2007                    Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of February, 2007, a copy of the foregoing answers and objections to defendants' first set of interrogatories was deposited in the U.S. Mail with first-class postage affixed, addressed as follows:

Brian G. Kennedy, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Room 7204
Washington, DC 20530

and was sent by email to Brian G. Kennedy at brian.kennedy@usdoj.gov.

    /s/ Richard A. Samp
Richard A. Samp