Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 1

1     UNITED STATES DISTRICT COURT
2           DISTRICT OF COLUMBIA
3
4     - - - - - - - - - - - - - - - - - - - - x
5  WASHINGTON LEGAL FOUNDATION,
6                     Plaintiff,
7     v.
8                              Civil Action
9                              No. 1:06CV01490(RMC)
10 MICHAEL O. LEAVITT, in his official
11 capacity as Secretary, U.S. Department
12 of Health and Human Services,
13
14 and
15
16 LESLIE V. NORWALK, in her official
17 capacity as Acting Administrator, Centers
18 for Medicare and Medicaid Services,
19                     Defendants.
20 - - - - - - - - - - - - - - - - - - - - x
21
22
23 DEPOSITION OF MARY A. SAMP
24 MAY 4, 2007

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 2

1     DEPOSITION of MARY A. SAMP, a witness

2  called on behalf of the Defendants, taken

3  pursuant to the Federal Rules of Civil

4  Procedure before Julie A. Mercier, Registered

5  Professional Reporter, CSR No. 120993 and

6  Notary Public in and for the Commonwealth of

7  Massachusetts, at the Youville House, 1573

8  Cambridge Street, Cambridge, Massachusetts, on

9  Friday, May 4, 2007, commencing at 12:30 p.m.

10 APPEARANCES:

11     WASHINGTON LEGAL FOUNDATION

12     By Richard A. Samp, Esq.

13     2009 Massachusetts Avenue, N.W.

14     Washington, D.C. 20036

15     (202) 588-0302

16     For the Plaintiff.

17

18     U.S. DEPARTMENT OF JUSTICE

19     By Brian G. Kennedy, Esq.

20     20 Massachusetts Avenue, N.W.

21     Room 7342

22     Washington, D.C. 20530

23     (202) 514-3357

24     For the Defendants.

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 3

```
 1                I N D E X

 2   Deposition of:  Direct   Cross   Redirect Recross

 3   MARY A. SAMP

 4      By Mr. Kennedy    4                   41

 5      By Mr. Samp              40

 6

 7

 8

 9

10

11                E X H I B I T S

12   No.                               Page

13

14

15

16

17

18

19

20

21

22

23

24
```

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 4

1        P R O C E E D I N G S

2            MARY A. SAMP,

3

4   a witness called for examination by counsel for

5   the Defendants, having been satisfactorily

6   identified by the production of her driver's

7   license, and being first duly sworn, was

8   examined and testified as follows:

9

10           DIRECT EXAMINATION

11  BY MR. KENNEDY:

12       Q.   Good afternoon, ma'am.

13            Your name is?

14       A.   Mary Samp.

15       Q.   And my name is Brian Kennedy. I'll

16  be asking you questions today. And I have a

17  tendency to talk too fast or talk too unclearly

18  or talk too obtusely or many other sins.

19       A.   Too quietly.

20       Q.   Or too quietly? My gosh, I haven't

21  heard that one for awhile.

22            If for any reason you can't

23  understand the question or want me to repeat

24  it, let me know, and I'll see if I can do

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 5

```
1    better.
2        A.   I will.
3        Q.   What's your address?
4        A.   1573 Cambridge Street, Apartment 205,
5    Cambridge 02138.
6        Q.   Do you have an e-mail address also?
7        A.   No, I don't.
8        Q.   How long have you lived here?
9        A.   About almost four years.  Close to
10   four years.
11       Q.   And you are married to Edward Samp?
12       A.   Correct.
13       Q.   And I understand that between the two
14   of you, you are the one who takes care of
15   arranging medical coverage for the both of you?
16       A.   I do my best.  I do.
17       Q.   And did you previously file a
18   Declaration in this case?
19       A.   Correct.
20       Q.   Did you review a copy of that
21   Declaration before this deposition?
22       A.   Yes, I did.
23       Q.   Let me hand you a copy.  I think this
24   is a copy of the Declaration.  I hope it is.
```

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 6

```
1       A.   It says, Declaration of Mary A. Samp.
2       Q.   Do you recognize this?
3       A.   Yes, I do.
4       Q.   Is there anything in the Declaration
5  as you've just reviewed it this morning that
6  strikes you today as inaccurate that you'd like
7  the chance to correct?
8       A.   I think it's fine.
9       Q.   Are you employed, ma'am?
10      A.   No.
11      Q.   Are you retired?
12      A.   Yes, I am retired.
13      Q.   Do you have any retirement health
14 insurance?
15      A.   I had some health insurance from my
16 retirement.
17      Q.   Do you have health insurance now from
18 your retirement?
19      A.   I do.
20      Q.   Who is the employer who's providing
21 your retirement health insurance?
22      A.   Harvard University.
23      Q.   How long did you work for Harvard?
24      A.   I think about 12 years, 13 years.
```

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 7

```
1      Q.   When did you retire from Harvard?
2      A.   I retired, I believe, in 1980.  Does
3  that sound right?  I think so.  I would have
4  been 60.  I retired -- yes.
5      Q.   What were you doing for Harvard?
6      A.   I worked at Harvard Business School
7  in the library.
8      Q.   A librarian.  Great.
9           Were you a librarian?
10     A.   No, I was not a librarian.
11     Q.   That will teach me to assume things.
12 Good thing I asked.
13     A.   Yes.
14     Q.   But you worked in the library?
15     A.   Yes, I worked in the library.
16     Q.   Your husband, does he have any
17 retirement health insurance?
18     A.   Yes.
19     Q.   And which employer provides that
20 health insurance?
21     A.   City of Cambridge.
22     Q.   And how long did he work for the City
23 of Cambridge?
24     A.   I'm not sure.  He worked, he worked
```

O'Brien & Levine Court Reporting Services
888.825.DEPO(3376) * www.court-reporting.com

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 8

```
1   for the City of Cambridge as an election
2   commissioner, and I can't tell you, I can't
3   tell you just how many years he worked for
4   them.
5         Q.   Do you recall about when he retired?
6         A.   Yes.  Let's see...  When we moved in
7   here -- he was already retired when we moved in
8   here.  I'm trying to think how old he would
9   have been.  I'm not sure when he retired.  I
10  can't give you a correct date on that.  The
11  City of Cambridge could tell you.
12        Q.   Who is your pharmacist, if you have
13  one?
14        A.   Skenderian which is just here.
15        Q.   And who is Edward's pharmacist?
16        A.   Who is...
17        Q.   Do you go to the same pharmacist?
18        A.   We go to the same pharmacy.
19        Q.   Has that been your pharmacy since you
20  moved into this residence?
21        A.   Is that...
22        Q.   How long has that been your pharmacy?
23        A.   Oh, ever since we moved into this
24  building here.
```

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 9

```
1      Q.   But not before?
2      A.   No.
3      Q.   Where did you live before this
4  residence?
5      A.   Where did...
6      Q.   Where did you live before this
7  residence?
8      A.   Agassiz Street in Cambridge.
9      Q.   How do you spell Agassiz?
10     A.   A G A S S I Z.
11     Q.   Okay.  The naturalist, right.
12              How did you choose your
13 pharmacist?
14     A.   I guess because for one thing
15 Skenderian has a good reputation, it's a local
16 pharmacy, and it is about a block and a half
17 from here.
18     Q.   Did you consider price at all when
19 you chose that pharmacy?
20     A.   Not particularly.
21     Q.   Did you consider what health plans,
22 medical plans they accepted at Skenderian when
23 you chose that pharmacy?
24     A.   No.
```

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 10

1    Q.    Have you had any problems getting
2  your health plans accepted by that pharmacy?
3    A.    No, not as far as I know.
4    Q.    The health insurance you have with
5  Harvard University, I would like to ask you a
6  few questions about that, ma'am.
7         Do you have to pay a premium for
8  that insurance?
9    A.    I pay something which is deducted.
10   Q.    What is it deducted from?
11   A.    Pension.
12   Q.    Do you know how much you pay?
13   A.    No.
14   Q.    Have the rules about whether you have
15 to pay anything changed since 2005?
16   A.    No.
17   Q.    And do you know if the premiums have
18 changed since 2005?
19   A.    No.
20   Q.    Have you ever given any thought to
21 disenrolling from the Harvard retirement plan?
22   A.    I haven't particularly.
23   Q.    Do you know what -- have you
24 generally thought about maybe quitting that

Page 11

```
 1   retirement health plan?
 2        A.   I have no particular thought because
 3   I don't know enough about it.
 4        Q.   Do you know what the pharmacy
 5   benefits of the health plan are?
 6        A.   Do I know what the pharmacy...
 7        Q.   What, if anything, the health plan
 8   pays towards your pharmacy costs?
 9        A.   I don't know.
10        Q.   Do you take any prescription drugs,
11   ma'am?
12        A.   No.  My husband.
13        Q.   But you yourself don't take any
14   prescription drugs?
15        A.   That's right.
16        Q.   Wow.  I'm feeling so bad right now.
17   I thought I was doing good only having two at
18   my age, but to run into somebody at your age
19   with zero is remarkable.
20             Did you take any prescription
21   drugs in the past few years?
22        A.   No.
23        Q.   What about your husband, he takes
24   prescription drugs?
```

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 12

```
1    A.   Yes.
2    Q.   Do you know about how many he takes?
3    A.   How many?
4    Q.   Right.  Do you know which ones he
5  takes?
6    A.   Actually, I probably would recognize
7  them.  He takes many.
8    Q.   Five?  Ten?  Fifteen.  I've had a
9  witness hand me a list of 25, so you might not
10 set the record, but maybe you will.
11   A.   You mean how many pills does he take
12 a day?
13   Q.   How many different drugs.
14   A.   How many different drugs?  I think he
15 takes probably -- it's at least a dozen.
16   Q.   Do you remember any of the names of
17 the drugs?
18   A.   Mm-hmm.
19   Q.   Can you tell me what they are?
20   A.   You want to hear them?
21   Q.   Yes.
22   A.   Sodium Dilantin is one.  And
23 there's -- he takes one that is a Lasix.  It
24 has a different name, but it is a Lasix.
```

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 13

```
 1      Q.   It's a generic?  You say it's a
 2  different name?
 3      A.   I don't know what the name -- I
 4  couldn't give you the name.  And then he takes,
 5  well, a very pretty blue pill, and that is --
 6  I'm trying to remember, see what I can remember
 7  really of the names.  There are two drugs that
 8  he takes which are for prostate, and the blue
 9  pill is one of them.  And I can't remember the
10  name of either one.
11      Q.   Okay.
12      A.   Let's see what I can do for you.  I
13  think there's Metoprolol, and I'm not sure just
14  what that is.
15      Q.   Any others that come to mind?  Does
16  he take anything like for his heart or anything
17  like that, a cholesterol drug or something like
18  that?
19      A.   No.  The Lasix is for swelling in his
20  legs.  And then he has to take something which
21  counteracts that a little bit, and it's a
22  yellow pill.  I can't give you the name of
23  that.
24      Q.   Okay.  Does he take any blood
```

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 14

```
 1   thinners or anything like that?
 2       A.   What?
 3       Q.   Blood thinners or anything like that?
 4       A.   Only -- he doesn't take -- he takes a
 5   baby aspirin.
 6       Q.   But that's not a prescription drug?
 7       A.   Probably not.
 8       Q.   Do you know if he takes brand name
 9   drugs or generic drugs or both?
10       A.   What was the first one?
11       Q.   Does he take brand name drugs or
12   generic drugs or both?
13       A.   Probably some of both.
14       Q.   Have you ever had any trouble getting
15   a brand name drug that you wanted and one of
16   his health plans insisted on a generic instead?
17       A.   No.
18       Q.   Do you know how much he pays for the
19   health insurance he has from the City of
20   Cambridge?
21       A.   I don't.
22       Q.   Do you know if he pays anything for
23   it?
24       A.   I believe it's probably deducted from
```

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 15

1   his pension.
2       Q.   Do you know if the general deal in
3   that respect has changed since 2005?
4       A.   If the general what?
5       Q.   The general deal.  I mean you don't
6   know exactly how much he pays today, and
7   sometimes premiums go up and down, so...  I
8   assume maybe it has changed, but I'm wondering
9   if the general landscape or the general picture
10  has changed?
11      A.   General picture I don't believe has
12  changed.
13      Q.   And do you know what, if any,
14  pharmacy benefits that plan provides?
15      A.   If any pharmacy...
16      Q.   What, if any, benefits that plan
17  provides with respect to paying for
18  prescription drugs.
19      A.   I don't know.
20      Q.   Do you go to the pharmacy to pick up
21  the drugs or does the pharmacy deliver them to
22  you here?
23      A.   Either way.  Bad weather, the
24  pharmacy delivers.

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 16

```
1        Q.   Do they have your insurance
2   information on file, do you know?
3        A.   Yes.
4        Q.   And do you know if they bill -- do
5   they bill you or do they tell you there's a
6   copay or do you give them cash or how does that
7   work?
8        A.   Well, usually at the end of the month
9   we have a statement that comes out, but I
10  really -- it isn't something that I have been
11  able to interpret particularly well.
12       Q.   This is a statement from the
13  pharmacy?
14       A.   I'm not sure who it comes from.  It
15  shows how much gets paid for us by, I guess,
16  insurance and then how much we pay.
17       Q.   And does this come from the City of
18  Cambridge or from Skenderian?
19       A.   Probably -- I don't know.  My guess
20  is that it's probably the City or the City
21  Health.  We belong to the Cambridge Health
22  Alliance.
23       Q.   You both belong to the Cambridge
24  Health Alliance?
```

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 17

1    A.    I don't think so.
2    Q.    Okay.  Just your husband?
3    A.    Just my husband, yes.
4    Q.    Is he enrolled in that through the
5    City of Cambridge?
6    A.    I believe so.
7    Q.    Do you know if you would have one of
8    these statements that you're talking about
9    upstairs that you might be able to share with
10   me?  I know I didn't ask you to do that, so...
11   A.    I probably do.  I probably do if my
12   filing system is working.
13   Q.    Maybe I can ask your attorney.  I
14   might ask you if you can produce that or not.
15   I don't know, I know I didn't ask for
16   individual statements, so you're under no
17   obligation to do that.
18             Your husband is also eligible, I
19   understand from your Declaration, for TRICARE?
20   A.    Correct.
21   Q.    What is TRICARE?
22   A.    It's under the Federal Government,
23   and I believe it is as a veteran that he is
24   eligible for TRICARE which will pay -- if

Mary Samp 5/4/2007
Washington Legal Foundation v. Michael O. Leavitt, et al.

Page 18

1  Medicare approves something, and this is
2  probably hospital and doctor benefits, that it
3  will pay whatever other insurance doesn't pay.
4      Q.   How much does he pay for his TRICARE
5  coverage?
6      A.   Nothing.  That's as a veteran.
7      Q.   And do you know whether TRICARE pays
8  for any pharmacy benefits?
9      A.   I don't know.  I don't believe it
10 does.
11     Q.   Could you look, there's an attachment
12 to your Declaration which was -- in particular
13 I'm looking at --
14     A.   Harvard University?
15     Q.   No.  The Assistant Secretary of
16 Defense.  We're in the modern age of
17 downloading documents from the Internet when we
18 file, so...
19     A.   Guess who doesn't use a computer?
20     Q.   You don't use a computer?
21     A.   (Witness shakes head.)
22     Q.   Does your husband use a computer?
23     A.   No.
24              This is from the Assistant

Page 19

1   Secretary of Defense, yes, and that shows

2   TRICARE.

3       Q.   It says, the first line, "This notice

4   has information about your current TRICARE

5   prescription drug coverage."  Does that change

6   your view about or your recollection about

7   whether TRICARE provides prescription drug

8   coverage?

9       A.   My recollection is that we don't have

10  TRICARE prescription drug coverage.

11      Q.   So you got a notice that -- this

12  notice then was confusing to you -- what did

13  you think when you got this notice then?

14      A.   I wondered what I ought to be doing

15  because -- the thing that it says it was that

16  TRICARE will paid secondary to Medicare.

17      Q.   Do you know what that means?

18      A.   No.  I don't know exactly what that

19  would mean.

20      Q.   Do you know what -- do you know

21  whether Skenderian has -- does Edward have a

22  card or something else from TRICARE or a

23  military ID that shows that he's eligible for

24  TRICARE coverage?