# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REBECCA E. FOX, MARY A. SAMP, and EDWARD J. SAMP,<br><br>  Plaintiffs,<br><br>  v.<br><br>MICHAEL O. LEAVITT, in his official capacity as Secretary, U.S. Department of Health and Human Services,<br><br>  and<br><br>KERRY WEEMS, in his official capacity as Acting Administrator, Centers for Medicare and Medicaid Services,<br><br>  Defendants. | Case No. 1:06CV01490 (RMC) |

### SUPPLEMENTAL DECLARATION OF MARY A. SAMP

I, Mary A. Samp, do hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. My name is Mary A. Samp. I am a resident of the Commonwealth of Massachusetts, and I am of sufficient competence to make this declaration. I make this declaration upon my personal knowledge and in support of the Plaintiffs' Motion for Summary Judgment and of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

2. I am 87 years old. I was married to my husband, Edward J. Samp Jr. from 1946 until his death on November 23, 2007. I have been a Medicare beneficiary since I turned 65. I am a resident of Youville House, an assisted living facility for senior citizens located in Cambridge, Massachusetts. I continue to drive. I pride myself in my ability to continue to

handle our personal affairs.

    3. My husband's health was not as good as mine in recent years. In the past decade, a variety of illnesses and injuries required him on occasion to move into several different nursing facilities and rehabilitation centers. This declaration provides supplemental information regarding his health status since I executed my October 2007 declaration.

    4. My husband broke his ankle on July 29, 2007. After a brief hospitalization, he entered the Lexington Health Center (LHC) in Lexington, Massachusetts on August 3, 2007 to begin his recovery. My understanding is that LHC is certified for participation in the federal Medicare program as a skilled nursing facility, and is also certified for participation in the Massachusetts Medicaid program as a nursing facility. He remained at LHC until approximately Friday, August 24, 2007, when he was transferred to the Youville Rehabilitation Center so that he could be closer to me, but with the understanding that he could stay there for a limited time only.

    5. During the week of October 15, 2007, he was transferred to Sherrill House in Boston, Massachusetts to continue his recovery. Like LHC, Sherrill House is certified for participation in the federal Medicare program as a skilled nursing facility, and is also certified for participation in the Massachusetts Medicaid program as a nursing facility. He remained at Sherrill House for more than a month, until he was hospitalized several days before his death. I found the staff at Sherrill House to be friendly and cooperative. Because the "open season" for Medicare Part D enrollment is approaching, I would have appreciated receiving advice from Sherrill House personnel regarding which Part D plan was best for Edward. However, it is my understanding that those personnel were prohibited by CMS rules from recommending a specific Part D plan to me.

6. Given Edward's uncertain medical needs over the past several years, I have desired to receive advice from my long-time pharmacist, Robert Skenderian, regarding which Part D plan best met his medical needs. I continue to desire to receive advice from him regarding which Part D Plan best meets my needs. However, Mr. Skenderian has indicated that although he is willing to discuss general considerations regarding choice of a Part D plan and would like to provide more specific information, he is prohibited by law from recommending a specific plan. I trust Mr. Skenderian's judgment and want to continue my relationship with his pharmacy.

7. Edward was enrolled in a Part D plan offered by Blue MedicareRx through Blue Cross Blue Shield of Massachusetts. We paid a monthly premium to the City of Cambridge (his former employer) to pay for all his Medicare coverage, including Medicare Part D. Edward purchased a large number of prescription medications on a regular basis. Because of that large volume, we paid a substantial amount of money out of our own funds in 2006 and 2007 for prescription drugs, in addition to the amounts paid by Blue MedicareRx on our behalf. We were disappointed that we were unable to obtain Mr. Skenderian's advice regarding whether there was another Part D plan that would better meet Edward's needs.

Under penalty of perjury, I state on this 28th day of November, 2007, that I have read the foregoing declaration consisting of seven (7) numbered paragraphs, and the statements herein are true and correct to the best of my knowledge, information, and belief.

*Mary A. Samp*
Mary A. Samp