UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| REBECCA FOX, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 06-1490 (RMC) |
| ) | |
| MICHAEL O. LEAVITT, et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

The Washington Legal Foundation ("WLF") originally filed this suit. When the Court found that WLF lacked standing,[1] the attorneys involved in the case amended the complaint to name their own parents as plaintiffs[2] — but these plaintiffs lack standing as well. Rebecca Fox, Mary Samp, and Edward Samp, Jr. brought this suit against the U.S. Department of Health and Human Services and its component agency, Centers for Medicare and Medicare Services[3] (collectively "CMS"). The Amended Complaint presents a First Amendment challenge to two CMS policies regulating private entity marketing of Medicare Part D, the Medicare prescription drug benefit. *See*

---

[1] *See Wash. Legal Found. v. Leavitt*, 477 F. Supp. 2d 202, 212 (D.D.C. 2007) (on preliminary injunction motion, WLF failed to show likelihood of success on the merits because it did not have proper associational standing).

[2] Plaintiffs' counsel, Richard Samp, is the son of Mr. and Mrs. Samp; Mrs. Fox's son, Thomas, is an attorney at Reed Smith, a law firm that has been involved in obtaining the declarations in support of Plaintiffs' case. *See, e.g.*, Pls.' Mem. in Supp. of Mot. for Summ. J. ("Pls.' Mem."), Ex. B, England Decl. (faxed to attorney at Reed Smith).

[3] The First Amended Complaint names as defendants Michael O. Leavitt, in his official capacity as Secretary of the Department of Health and Human Services, and Leslie V. Norwalk, in her official capacity as Acting Administrator of the Centers for Medicare and Medicaid Services.

Am. Compl. [Dkt. # 16]. Plaintiffs filed a motion for summary judgment, and CMS filed a cross motion seeking dismissal due to lack of standing or for summary judgment on the merits. Because Plaintiffs lack standing to bring this suit, Plaintiffs' motion for summary judgment will be denied and dismissal will be granted.

## I. FACTS

Medicare Part D was established through the adoption of Title I of the Medicare Prescription Drug Modernization and Improvement Act of 2003 ("MMA"), Pub. L. No. 108-173, codified at 42 U.S.C. §§ 1395w-101 *et seq*. Medicare Part D is a managed care program that uses private health care organizations to sponsor prescription drug benefit plans. The government contracts with private entities to deliver Medicare services through Medicare Advantage Plans ("MAs") and Medicare prescription drug plans ("PDPs"). Medicare beneficiaries may choose from a number of plans with different coverage and prices.

The MMA requires the Secretary of Health and Human Services to "broadly disseminate information to part D eligible individuals . . . regarding the coverage provided" under Part D. 42 U.S.C. § 1395w-101(c)(1). The plans that provide Part D coverage are required to provide their enrollees an explanation of benefits and detailed information regarding the plan, including which drugs are covered and beneficiary cost-sharing requirements. *Id*. § 1395w-104(a)(1)(B) & (a)(4).

CMS has issued Marketing Guidelines that govern the information that health care providers, including pharmacists and nursing homes, give to Medicare Part D beneficiaries. *See* Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem."), Ex. A ("Marketing Guidelines"). Because a health care provider has an incentive to encourage a beneficiary to enroll in a particular

plan when it would financially benefit the provider, the Marketing Guidelines provide that providers "cannot direct, urge or attempt to persuade beneficiaries to enroll in a specific plan." Marketing Guidelines at 123-24. The Marketing Guidelines similarly prohibit providers from "marketing" by:

> steering, or attempting to steer, an undecided potential enrollee towards a plan, or limited number of plans, and for which the individual or entity performing marketing activities expects compensation directly or indirectly from the plan for such marketing activities. "Assisting in enrollment" and "education" do not constitute marketing [and are thus permissible].

*Id*. at 8; *see also id*. at 127-28. Thus, the Guidelines prohibit providers from steering patients to or from any particular MA or PDP, but permit providers to give patients information regarding plans.

In addition to the Marketing Guidelines, on May 11, 2006, CMS released a memorandum to state regulatory agencies in charge of nursing home review. This memorandum prohibits nursing homes from steering their residents to any MA or PDP. The memorandum states:

> Under no circumstances should a nursing home require, request, coach or steer any resident to select or change a plan for any reason. Furthermore, a nursing home should not knowingly and/or willingly allow the pharmacy servicing the nursing home to require, request, coach, or steer any resident to select or change a plan [42 C.F.R. § 483.12(d)]. Nursing homes may, and are encouraged to, provide information and education to residents on all available Part D plans.

Compl., Ex. B (the "Nursing Home Policy").[4]

Rebecca Fox and Mary Samp are Medicare beneficiaries, eligible for Part D, currently in their late eighties. At the time the Amended Complaint was filed, Edward Samp also was a Part D-eligible Medicare beneficiary of similar age. Mr. Samp died on November 23, 2007, and Mrs. Samp was substituted as representative of his estate as of January 14, 2008. *See* Order [Dkt. # 32].

---

[4] Plaintiffs filed the exhibits referenced in the Amended Complaint with the original Complaint, but not with the Amended Complaint.

Plaintiffs challenge the CMS Marketing Guidelines and the Nursing Home Policy, alleging that by imposing limitations on the information that health care providers may communicate to Medicare beneficiaries, CMS violates the First Amendment rights of Medicare beneficiaries to receive information regarding insurance coverage.

Plaintiffs filed a motion for summary judgment, and CMS filed a cross motion seeking dismissal due to lack of standing or for summary judgment on the merits.[5] Because Plaintiffs lack standing to bring this suit, the Court lacks jurisdiction to hear their complaint and it must be dismissed.

## II. MOTION TO DISMISS STANDARD

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because subject matter jurisdiction is an Article III as well as a statutory requirement, "no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

The court must give the plaintiff's factual allegations closer scrutiny when resolving

---

[5] Although CMS's motion requests summary judgment pursuant to Federal Rule of Civil Procedure 56, the request to dismiss based on Plaintiffs' lack standing is properly treated as a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### III. ANALYSIS

#### A. Standing

As a matter of basic constitutional law, federal courts are limited to deciding cases and controversies, and the issue of standing is one feature of such a limitation. *Am. Legal Found. v. FCC*, 808 F.2d 84, 88 (D.C. Cir. 1987) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)). A plaintiff's standing under Article III of the United States Constitution must be determined first in order to establish the jurisdiction of the Court to hear the case and reach the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *Grand Council of the Crees v. FERC*, 198 F.3d 950, 954 (D.C. Cir. 2000). "Standing focuses on the complaining party to determine 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Am. Legal Found.*, 808 F.2d at 88 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "[T]he decision to seek review must be placed in the hands of those who have a direct stake in the outcome, not in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." *Id.* at 91 (internal quotation marks omitted) (quoting *Diamond v. Charles*, 476 U.S. 54, 61 (1986)). "The focus is on the qualifications and status of the party seeking to bring his complaint before a federal court and not on

the issues he wishes to have resolved." *McKinney v. U.S. Dep't of Treasury*, 799 F.2d 1544, 1549 (Fed. Cir. 1986) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 28 (1976)).

To assert standing, a plaintiff must allege: (1) an actual or imminent injury in fact; (2) fairly traceable to the challenged action of the defendant; that is (3) likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The injury alleged cannot be conjectural, hypothetical, remote, speculative or abstract; it must be certainly impending. *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

In this case, Plaintiffs claim that CMS has prevented health care providers from giving Plaintiffs information they need and that the providers would be willing to share, but for the challenged CMS policies. Plaintiffs must show causation. *Lujan*, 504 U.S. at 561-62. To maintain a "right to listen" claim, a plaintiff must clearly establish the existence of an otherwise willing speaker, and that the challenged policies caused the speaker to be unwilling to speak. *Pa. Family Inst. v. Black*, 489 F.3d 156, 166 (3d Cir. 2007). Plaintiffs have not shown that their health care providers have declined to provide them with needed advice based on the Marketing Guidelines or the Nursing Home Policy.[6]

### 1. Mrs. Fox's Standing to Bring Suit Related to Marketing Guidelines

Mrs. Fox indicated that the first time she attempted to speak to her pharmacist regarding prescription drug plans, he was too busy to talk to her. Defs.' Mem., Ex. 6, Fox Dep. at

---

[6] Because Plaintiffs must demonstrate that their own health care providers declined to provide advice regarding which Medicare prescription drug plan to choose based on the Marketing Guidelines or the Nursing Home Policy in order to meeting standing requirements, the numerous affidavits Plaintiffs filed from persons who are not their health care providers are simply not relevant with regard to the issue of standing. *See* Pls.' Mem., Exs. B - G.

39.[7] The second and last time she spoke to her pharmacist to obtain advice regarding prescription drug plans, the pharmacist stated that he did not "know" what to tell her. Mrs. Fox testified

> Q. And did you talk to him later?
>
> A. Well, then I said, "Ron, what am I going to do?" And he said, "Mrs. Fox, I don't know what to tell you. I just can't speak specifically to you."

*Id.*, Fox Dep. at 40. There is no indication in this quote that the pharmacist did not "know" what to tell Mrs. Fox due to the Marketing Guideline's prohibition on steering. The pharmacist might not have known what to say because he lacked knowledge regarding prescription drug plans and their benefits and costs and he lacked knowledge regarding Mrs. Fox's financial circumstances.[8] Mrs. Fox has not established that her pharmacist would have been willing to direct her to a particular Medicare PDP but for the Marketing Guidelines. Accordingly, she lacks standing to make a First Amendment claim based on these Guidelines.

### 2. Mrs. Samp's Standing to Bring Suit Related to Marketing Guidelines

Mrs. Samp's pharmacist is Edward Skenderian. Defs.' Mem., Ex. 6, Samp. Dep. at 8. Before filing this suit, Mrs. Samp had never asked her pharmacist for any advice regarding which Medicare PDP to choose.

> Counsel: Have you ever spoken to Mr. Skenderian to ask his

---

[7] It is not clear who Mrs. Fox's pharmacist is. In her deposition she testified that her pharmacist was Ron Decy. Defs.' Mem., Ex. 5, Fox Dep. at 9. In her Declaration she indicated that her pharmacist is Ron Orvick. Pls.' Mem., Ex. H, Fox Decl. ¶ 3. There is no Ron Orvick registered as a pharmacist in Pennsylvania where Mrs. Fox lives; she might be referring to Ronald P. Ocvirk, who is a registered pharmacist in Pennsylvania. *See* Defs.' Mem. at 19.

[8] The Marketing Guidelines do not require pharmacists to act as health insurance advisors. They do permit pharmacists to provide information, for example, about which plans include which drugs in their formularies. *See* Marketing Guidelines at 123.

>recommendation as to which plan for prescription drugs would be best for you?
>
>Mrs. Samp: No, I haven't.

*Id.*, Samp Dep. at 40.

Under the Marketing Guidelines, providers may give advice regarding *whether* to enroll in a plan, but they cannot indicate *which* plan someone should choose. Mrs. Samp never asked her pharmacist whether to enroll in a Part D plan, *see id.*, Samp Dep. at 37, much less for a recommendation to a particular Part D Plan. *Id.*, Samp. Dep. at 40. At the time of her deposition, Mrs. Samp indicated that she did not take any prescription drugs and that she had retiree health benefits, including prescription coverage, from Harvard University. *Id.*, Samp. Dep. at 6 & 11. Mrs. Samp determined that she should continue her prescription coverage through Harvard, based on a Harvard Retiree's Association newsletter that recommended strongly that Harvard retirees would be better off not switching to a Part D plan. Pls.' Mem., Ex. I, Samp Decl. ¶ 6. As a person who neither took prescription drugs nor had decided to change her current health care plan, it is no wonder that Mrs. Samp did not ask her pharmacist to recommend a Part D Plan.

Because Mrs. Samp never asked Mr. Skenderian or any other health care providers for advice regarding which prescription drug plan she should enroll in, she has not shown any injury in fact that is traceable to the challenged action, the Marketing Guidelines. *See Lujan*, 504 U.S. at 560-61. She lacks standing to bring a First Amendment claim based on those Marketing Guidelines.

Mrs. Samp belatedly attempts to create standing by filing a Supplemental Declaration in which she contradicts her own sworn deposition testimony. Despite the fact that she is not in the market for a Part D plan because she takes no prescription drugs and she has determined that she is

better off staying with her Harvard medical plan, she now asserts

> I continue to desire to receive advice from [Mr. Skenderian] regarding which Part D Plan best meets my needs. However, Mr. Skenderian has indicated that although he is willing to discuss general considerations regarding choice of a Part D plan and would like to provide more specific information, he is prohibited by law from recommending a specific plan.

Pls.' Reply, Ex. A, Supp. Samp Decl. ¶ 6. Plaintiffs also filed with their reply brief the Declaration of Mr. Skenderian, stating "I am not willing to recommend a specific Part D Plan to [Mrs. Samp] because I am prohibited by [sic] from doing so by rules promulgated by CMS." *Id.*, Ex. B, Skenderian Decl. ¶ 4. A plaintiff cannot create a genuine issue of fact and defeat summary judgment by filing an affidavit that contradicts her own previous sworn testimony. *Reetz v. Jackson*, 176 F.R.D. 412, 414 (D.D.C. 1997); *accord Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 669 (D.D.C. 1997) (plaintiff cannot, in the 11th hour when faced with a properly supported motion for summary judgment, generate a sworn affidavit to contradict her own prior sworn testimony). The Court must disregard such an affidavit. *Reetz*, 176 F.R.D. at 414.

### 3. Standing Regarding Claim Based on Nursing Home Policy

Mrs. Fox and Mrs. Samp do not live in nursing homes; they currently live "largely independent lives." Pls.' Reply at 11. Mrs. Fox lives independently in her family home and she continues to drive. Pls.' Mem., Ex. H, Fox Decl. ¶ 2. Mrs. Samp lives in an assisted living facility, and she also continues to drive. *Id.*, Ex. A, Supp. Samp. Decl. ¶ 2. Even so, Mrs. Fox and Mrs. Samp assert that they have standing to bring suit with regard to the Nursing Home Policy because at age 88 and 87,[9] respectively, there is a likelihood that they will move to a skilled nursing home.

---

[9] Mrs. Fox was 88 years old when she provided her October 8, 2007 Declaration. Fox Decl. ¶ 2. Mrs. Samp was 87 at the time she provided her Supplemental Declaration on November 28,

Plaintiffs provide no support for this proposition. The mere possibility that Plaintiffs may someday live in a nursing home is speculative at best.[10] Plaintiffs have not shown that the Nursing Home Policy caused their health care providers to be unwilling to provide them with advice. They do not have standing to bring a First Amendment claim based on the CMS Nursing Home Policy, unless and until they are in a nursing home and the Policy affects them.

### B. Mootness

This case is moot with regard to Mr. Samp who is now deceased. Under the Constitution, federal courts are limited to deciding "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). "Even where the litigation posed a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' 'rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (citations omitted). A case is moot if: (1) interim events have completely and irrevocably eradicated the effects of the alleged violation; and (2) there is no reasonable expectation that the alleged wrong will be repeated. *Doe v. Harris,* 696 F.2d 109, 111 (D.C. Cir. 1982) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Because Mr. Samp is no longer living, there is no reasonable expectation that the alleged violation of his First Amendment rights could be repeated. The suit is moot as to Mr. Samp and as to Mrs. Samp as representative of his estate.

Plaintiffs assert that Mr. Samp's claim against CMS is not moot under the "capable

---

2007. *See* Supp. Samp Decl. ¶ 2.

[10] According to the 2000 Census, only 15.5% of Americans age 85 and older lived in nursing homes. *See* Defs.' Reply at 9 n.8.

of repetition, yet evading review" doctrine.  However, that doctrine, in the absence of a class action, is limited to cases where (1) the challenged action was too short in duration to be fully litigated prior to its cessation, and (2) there is a reasonable expectation that the *same* complaining party will be subject to the same action again.  *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *accord Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 633 (D.C. Cir. 2002).  Plaintiffs assert that the doctrine is not limited to situations where the very same complaining party could be subject to the same action, relying on *Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*, 469 F.3d 129, 136 (D.C. Cir. 2006).  Such reliance is erroneous; *Abigail Alliance* dealt with claims made by an association representing the terminally ill, and the court distinguished *Weinstein*, treating the suit by the association as the equivalent of a class action.

## IV.  CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary judgment [Dkt. # 20] will be denied.  CMS's motion for summary judgment [Dkt. # 23], treated as a motion to dismiss, will be granted.  This case will be dismissed for lack of jurisdiction under Rule 12(b)(1) because Plaintiffs lack standing.  Because this case is dismissed for lack of jurisdiction, the Court does not reach the merits of the case.  A memorializing order accompanies this Memorandum Opinion.


Date:   August 25, 2008                  _____/s/_____
                                         ROSEMARY M. COLLYER
                                         United States District Judge